THE STATE OF OHIO, APPELLANT, *v.* HURBEAN, APPELLEE.

(No. 3520—Decided July 29, 1970.)

*Mr. David D. Dowd, Jr.,* and *Mr. James D. Snively,* for appellant.

*Mr. Nicholas G. Caplea,* for appellee.

PUTMAN, J. This is an appeal from a judgment of the Canton Municipal Court entered pursuant to proceedings under R. C. 4511.191, ordering the Registrar of Motor Vehicles of the state of Ohio not to suspend the driver's license of Sylvia Hurbean, hereinafter designated as the licensee.

This matter was thoroughly considered by the trial court, as reflected by two separate journal entries, the first styled "Court's Ruling" filed April 18, 1969, and the second styled "Court's Ruling on Motion for Reconsideration—Reversal of Suspension Ruling" filed April 25, 1969.

Because of the clarity with which they set forth the issues, we set them forth in full:

"COURT'S RULING

"This matter comes before the Court on an appeal from an order of the Registrar of Motor Vehicles suspending the operator's license of the appellant for a period of six months for having refused to take a chemical test, after having been arrested and charged with operating a motor vehicle while under the influence of alcohol.

"The entire procedure in this case is subject to the provisions of R. C. 4511.191, effective 3/10/68. The gist of this section, and the penalties connected therewith is, 'the refusal of the arrested person to take the test.'

"R. C. 4511.191 subsection (F) provides in part:

" 'Any person whose license or permit to drive or nonresident operating privilege has been suspended under this section, may, within twenty days of the mailing of the notice provided above, file a petition in the Municipal Court or the county court, * * * in whose jurisdiction such person resides, agreeing to pay the cost of the proceedings and alleging error in the action taken by the Registrar of Motor Vehicles under division (D) * * *. The

scope of such hearing shall be limited to the issues of whether a police officer had reasonable ground to believe the person had been driving a motor vehicle upon the public highway in this state while under the influence of alcohol, whether the person was placed under arrest, whether he refused to submit to the test upon request of the officer, and whether he was advised of the consequences of his refusal.'

"Subsection (G) provides in part:

" 'In hearing the matter and determining whether such person has shown error in the action taken by the Registrar of Motor Vehicles under division (D) of this section, the court shall decide such issue upon the registrar's certified affidavit and such additional relevant, competent, and material evidence as either the registrar or the person whose license is sought to be suspended submits.

"If the court finds from the evidence submitted that such person has failed to show error in the action taken by the registrar of motor vehicles under division (D) of this section or in one or more of the matters within the scope of the hearing as provided in division (F) of this section * * *.'

"The court notes that subsection (G) places the burden of proof on the appellant to show any error in the action taken by the Registrar. This subsection also provides that the court shall decide this issue upon the registrar's certified affidavit and such additional evidence as either side submits.

"The scope of the hearing is also spelled out in subsection (F) of R. C. 4511.191, namely:

"1. Whether the officer had reasonable grounds to believe that the defendant had been driving a motor vehicle upon the public highways in this state while under the influence of alcohol.

"2. Whether the defendant was placed under arrest.

"3. Whether she refused to submit to the test upon request of the officer.

"4. Whether she was advised of the consequences of her refusal,

"The appellant offers no evidence and raises no issue on the first three grounds. On issue number 4 there is no denial that she was offered some advice, and that something was read to her, but that she did not understand the meaning of what was read and said to her.

"The court believes that both officers did tell her that if she did not take the test she would lose her license for six months. The appellant has been in this country for many years, during which she has been exposed to the English language, and a person who speaks a foreign language usually understands English better, and before they learn to speak it.

"The court is of the opinion that the appellant has failed to show any error in one or more of the matters within the scope of this hearing in the action taken by the Registrar of Motor Vehicles, and the court hereby assesses the costs against the appellant and orders that the operator's license of the appellant be and the same is hereby suspended for a period of six months. Exceptions to the appellant.

"JUDGE"

"COURT'S RULING ON MOTION FOR RECONSIDERATION—
REVERSAL OF SUSPENSION RULING

"The defendant has filed a motion for reconsideration which has caused the court added concern as to the correctness of the decision heretofore rendered. The court is satisfied with the analysis of the applicable parts of the statute and the burden placed upon the defendant or appellant in this case.

"Webster's Third New International Dictionary defines the word 'understand' as follows: 'To grasp the meaning of; comprehend. To apprehend the meaning or idea by knowing what is conveyed by the words.'

"The exact state of the mind of the defendant at the time of her arrest and as to how clear she did or did not understand what was told her, only she will ever know. The court has attempted to form a mental picture of the events and circumstances surrounding her apprehension and detention. The court pictures this defendant stopped by a police officer a few blocks from her home late at night.

She is somewhat of an emotional person, and there were words, and even a tussle between her and the arresting officer to the extent that she suffered a cut on her hand and she was handcuffed.

"The court further notes that her English was not too good, and as heretofore stated, just how much and how well she understood everything that was said and read to her under these circumstances, is subject to some question or doubt in the court's mind.

"This being a criminal case, every phase of the proof on behalf of the State ought to satisfy a court beyond a reasonable doubt. Her knowledge and understanding is an essential element to be considered.

"Taking all of these things into consideration, the court believes that error was committed in the opinion heretofore rendered, and now reverses said opinion, and finds that the petitioner has shown error in the proceedings, and the petition is granted and no suspension of her driver's license shall be imposed.

"Exceptions to the state.

"JUDGE"

After these Municipal Court proceedings were completed and this matter pending in our Court of Appeals, the Supreme Court of Ohio in the case of *State* v. *Starnes,* 21 Ohio St. 2d 38, decided January 14, 1970, that the "Implied Consent" statute, R. C. 4511.191, was civil and administrative in nature and constitutional.

The second paragraph of the syllabus reads:

"Section 4511.191 (F), Revised Code, does not violate the due process clause of the Fourteenth Amendment to the United States Constitution by permitting suspension of a person's driver's license upon proof less than proof beyond a reasonable doubt that (1) a police officer had reasonable ground to believe the person had been driving a motor vehicle upon the public highways in this state while under the influence of alcohol (2) the person was placed under arrest (3) the person refused to submit to a chemical test upon request of the officer and (4) the person was advised of the consequences of her refusal. Proceedings un-

der Section 4511.191 (F), Revised Code, are civil and administrative in nature and are intended for the protection of the traveling public, and are independent of any criminal proceedings which may be instituted pursuant to other statutes or ordinances.''

Applying that paragraph of the syllabus, we hold that it was reversible prejudicial error to require proof ''beyond a reasonable doubt.''

In view of the fact that the first two justiciable issues under R. C. 4511.191 (F) were resolved in favor of the state, no prejudice respecting the court's finding on those issues appears to have been done the state.

Likewise, the court's finding on the third and fourth justiciable issue, that, in fact, the officers had requested her to take a test and had given the licensee the requisite statutory advice in the statutory form and manner, was in favor of the state. No prejudice results therefrom even though the court stated that it tested the evidence by the standard of ''beyond a reasonable doubt.''

The Municipal Court did not, in its second entry, state upon which justiciable issue it had erred in the first entry. Therefore, we proceed to examine which, if any, statutory issues require a subjective understanding on the part of the licensee.

### I.

For reasons hereafter stated, only the statutory issue of refusal to take the test, when requested by the officer, could possibly include the factual question of the licensee's understanding.

Because of the licensee's admissions on cross-examination, it is insupportable to construe the Municipal Court's second entry, finding reasonable doubt that the licensee ''understood everything that was said and read to her under these circumstances,'' to include doubt that she understood she was being asked to take a test to determine if she were drinking. However, under the *Starnes case*, 21 Ohio St. 2d 38, the presence of reasonable doubt on any fact does not constitute legal error in the record, and we

hold that the Municipal Court erred prejudicially to the state of Ohio in holding that it was.

Having determined that a reversal is required, we must determine whether to remand the cause to the Municipal Court for rehearing or enter final judgment in favor of the state.

## II.

Therefore, we confront the legal question whether on this record reasonable minds could differ as to whether the licensee refused to take the test. This includes the question of law whether the evidence in this record is unclear by any degree of proof less than "beyond a reasonable doubt" that in fact she did not understand she was being requested to take a test by the officer.

We determine both those points of law against the licensee.

## III.

The statute provides that persons "incapable of refusal" are deemed not to have withdrawn their "implied consent" to take the test and authorizes the officers to test them.

The licensee does not claim, nor does any evidence indicate, that she was such a person. Her claim is simply that (1) she did not understand why the officers wanted to test her or (2) the consequences of her refusal. For reasons which follow, we hold, as a matter of law, that she has demonstrated no error in this respect.

On cross-examination the licensee admitted that she knew that the officers were asking her to take a test and that the purpose of the test was to determine whether she had been drinking. However, she had already admitted drinking; therefore, she couldn't understand why they wanted to test her to find out something she had already told them:

"Q. And, you say that they did ask you to take a test?

"A. Well, to tell the truth, they asked me to take a test. I told them I knew I was drinking, I don't know it was a must, I knew I was drinking a little bit, I tell them.

"Q. You knew what the test was for, to test whether or not you were drinking or not?

"A. Well, yes, but I say I was drinking; I told them I worked from different places; I told them I was drinking; that is all I know.

"Q. Did you know why they wanted you to take a test?

"A. I don't know why.

"Q. They didn't tell you why?

"A. No, sir."

We hold, as a matter of law, that that is an admission of all the understanding necessary to establish an actual refusal to take the test.

## IV.

An understanding of the advice respecting the consequences of a refusal to take the chemical test is not an element of the mental process of refusal to take the test.

All the understanding requisite to a refusal to take the test is an understanding that one has been asked to take a test. One who does not understand he has been asked to take a test cannot, of course, be said to have refused to take a test. Whether one who has been asked to take a test has understood that such a request has been made is a question of fact to be determined by the court from all the evidence. In this case it was admitted. This evidence may include the licensee's claim that he did not understand the advice as to the consequences of the refusal to take the test. But an understanding of the consequences of the refusal to take the test is not an element of understanding that a request to take the test has been made, nor a precondition of refusal.

The fact of refusal to take the chemical test provided for in R. C. 4511.191 appears whenever a preponderance of all the evidence shows that, under the circumstances described in the statute, the person who was given the request and advice in the statutory manner and form has thereafter conducted himself in such a way as to justify a reasonable person in the position of the requesting officer reasonably to believe that such requested person was

capable of refusal and manifested unwillingness to take the test. We hold, as a matter of law, that reasonable minds could only conclude that such a refusal was shown by this evidence.

We recognize that the Legislature has required an actual subjective refusal to take the test, but in this, as in all other cases, the state of the person's mind must be gathered from all the evidence, including that of his objective conduct. In these civil administrative licensing cases this includes all reasonable inferences flowing from his having voluntarily operated a motor vehicle upon the public highways of this state.

Minimum language skills are inherent in the ability to drive safely and essential to pass the written licensing examination.

Conversations with an arresting officer are now a part of the statutory administrative procedures included in the basic fabric of the Ohio driver's licensing regulations.

We hold that a person who voluntarily operates a motor vehicle upon the highways of this state is estopped, in a proceeding under R. C. 4511.191, to assert insufficient language skill to comprehend the request and advice provided in R. C. 4511.191 (C), when received in the statutory manner and form.

For a stronger reason, the incapacity cannot be asserted where it depends in part upon the effect of alcoholic beverages upon the licensee. Reasonably extended, such a contention would require that a statute enacted to clear drunk drivers from the highway could be judicially repealed by the defense of "too drunk to understand" the licensing procedures.

In the instant case the arresting officer felt it necessary to restrain the licensee with handcuffs. There was no claim that she lacked capacity to refuse the test, and the evidence confirms that she had the capacity to and did effectively block the taking of the test.

It is not clear what proportionate causal role the licensee's temperment, voluntary use of alcohol and lack of language skill played in this regrettable incident. What

is clear is that, taken together, the circumstances aggravate rather than mitigate. They justify the suspension rather than avoid it.

## V.

One contention advanced is that her refusal to take the test was based upon her desire to avoid losing her license as a result of a conviction for operating under the influence of alcohol, which would have resulted from the evidence of the test, and her failure to appreciate that her refusal to take the test would cause her to lose her license for a longer period of time than would a conviction for driving under the influence of alcohol.

That contention cannot prevail, for the reason that there is no requirement that the officer give her any advice respecting the license suspension consequences of a driving-under-the-influence conviction or any legal opinion as to the comparative severity of the two upon her personal right to drive.

In short, it is no defense, even if true, that she did not understand a subject upon which the officers are neither required nor permitted to give her legal advice.

## VI.

It is conceivable that the trial court took the view that, as a matter of law, an indispensible element of the registrar's authority to suspend a license under R. C. 4511.191 is a subjective understanding on the part of the licensee of the statutory advice given. The statute expressly enumerates the factual issues which the Municipal Court may judicially determine, and that issue is not one of them.

We do not examine the general finding made by the trial court, that there is reasonable doubt on the evidence before it respecting the licensee's understanding, because *State* v. *Starnes*, 21 Ohio St. 2d 38, renders that finding without legal consequence. Nor do we examine the implied included specific finding of the trial court finding reasonable doubt that the licensee understood the advice given to her respecting the consequences of her refusal to take the test. We hold, as a matter of law, that this is not an independently justiciable issue.

Whether that fact is shown by the evidence by any degree of proof is without independent legal consequence.

We hold, as a matter of law, that, where there is, in fact, a refusal to take the test, and where the advice as to the consequences of the refusal to submit to the test is given in the manner and form prescribed by the statute, it is not a defense to the license suspension that the licensee did not subjectively understand or fully comprehend the consequences of refusing to take the test.

If there was no subjective awareness on the part of the licensee that she was being asked to take the test, then, of course, it could not be true that she refused to take it. However, refusal to take a test when requested is a separate factual matter from an understanding of the consequences of the refusal.

Evidence bearing upon the fact question of whether the person under arrest understood what was told him may be considered for whatever light, if any, it may shed upon the issue whether such person did, in fact, refuse to submit to the test. However, where, under the statutory circumstances, there is in fact a refusal to take the test and where the advice as to the consequences of the refusal to submit to the chemical test is given in the manner and form prescribed by law, nothing more need be shown. The issue whether the advice was subjectively understood by the person under arrest is not an independently justiciable issue.

The Legislature has prescribed the form and manner in which the advice must be given to the licensee by the officer, and when compliance with all the statutory procedures appears it is not legally permissible or competent for the licensee to negate such compliance by establishing the fact that he did not understand the advice.

It is not mysterious why the Legislature has clearly provided the foregoing. The broad purpose of the statutes is to clear the highways of unsafe drivers, and the Legislature has not provided a means for the licensee to regain his license merely by asserting those personal defects which tend to impair his ability to be a safe driver.

The title "Implied Consent," following the statute number, is expressly stated in the first paragraph to relate to consent to a chemical test, and immediately thereafter the Legislature provides that those incapable of refusal shall be deemed not to have withdrawn this consent, and the test may be administered in those cases.

A statute authorizing a test upon a "person who is dead, unconscious, or who is otherwise in a condition rendering him incapable of refusal, * * *" should not be judicially amended to prohibit a test upon someone incapable of understanding advice.

Those provisions are constitutionally authorized, reasonable regulations, under the police power of the state, in the interest of public safety, upon the privilege to operate a motor vehicle upon a public street or highway.

## VII.

Although it was never called to the attention of the Municipal Court nor in the brief in this court, it was discussed in oral argument before this Court of Appeals that the advice given under R. C. 4511.191 (C) did not include the advice which is contained in the last paragraph of R. C. 4511.19. We hold it need not. Those two paragraphs read as follows:

R. C. 4511.191. IMPLIED CONSENT.

"(C) Any person under arrest for the offense of driving a motor vehicle while under the influence of alcohol shall be advised at a police station of the consequences of his refusal to submit to a chemical test designated by the law enforcement agency as provided in division (A) of this section. The advice shall be in a written form prescribed by the Registrar of Motor Vehicles and shall be read to such person. The form shall contain a statement that the form was shown to the person under arrest and read to him in the presence of the arresting officer and one other police officer or civilian police employee. Such witnesses shall certify to this fact by signing the form."

R. C. 4511.19. DRIVING WHILE INTOXICATED OR DRUGGED; TEST; BLOOD ALCOHOL CONTENT.

"The person tested may have a physician, or a quali-

fied technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a police officer, and shall be so advised. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a police officer.''

We hold that the two statutes are to be read separately. The second paragraph of the syllabus of *State* v. *Starnes,* 21 Ohio St. 2d 38, says that proceedings under R. C. 4511.191 are ''independent of any criminal proceedings * * * .'' Had the Legislature wished to require, as a matter of law, that the advice under civil R. C. 4511.191 (C) include the advice stated in the last paragraph of criminal R. C. 4511.19, it would have been a simple thing for it to make an express statement in that section to that effect. These statutes were not hastily drawn nor thoughtlessly considered. Their provisions have been hammered out by the legislatures of many other states and, as pointed out by our Supreme Court in the *Starnes case, supra,* have been litigated in the highest courts of several other states.

''* * * for the sure and true (*a*) interpretation of all statutes in general (be they penal (B) or beneficial, restrictive or enlarging of the common law,) * * *

''* * * the office of all the judges is always to make such (*d*) construction as shall suppress the mischief and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief and *pro privato commodo,* and to add force and life to the cure and remedy according to the true intent of the makers of the Act, *pro bono publico.*'' *Heydon's case* (1584), 3 Co. Rep. 7 a, 76 Eng.-Rep. 637, at 638.

The statutes, R. C. 4511.19 and R. C. 4511.191, are a legislative response to the mischief of drunk drivers.

Those statutes have as their general purpose the protection of the public from drunk drivers, and to give effect to that general purpose there is prescribed separate from, independent of, and cumulative to criminal prosecution a clear remedy of suspending the licenses of those drivers

who refuse to take a sobriety test. We construe the statute to suppress the mischief and advance the remedy.

## VIII.

The last issue to consider relates to the statutory requirement that the officer show the licensee the form required by R. C. 4511.191.

R. C. 4511.191 provides in pertinent part as follows:

"(C) Any person under arrest for the offense of driving a motor vehicle while under the influence of alcohol shall be advised at a police station of the consequences of his refusal to submit to a chemical test designated by the law enforcement agency as provided in division (A) of this section. The advice shall be in a written form prescribed by the Registrar of Motor Vehicles and shall be read to such person. *The form shall contain a statement that the form was shown to the person under arrest* and read to him in the presence of the arresting officer and one other police officer or civilian police employee. Such witnesses shall certify to this fact by signing the form.

"(D) If a person under arrest for the offense of driving a motor vehicle while under the influence of alcohol refuses upon request of a police officer to submit to a chemical test designated by the law enforcement agency as provided in division (A) of this section, *after first having been advised of the consequences of his refusal as provided in division (C) of this section,* no chemical test shall be given, but the registrar of motor vehicles, upon the receipt of a sworn report of a police officer that he had reasonable grounds to believe the arrested person had been driving a motor vehicle upon the public highways of this state while under the influence of alcohol and that the person refused to submit to the test upon the request of the police officer *and upon the receipt of the form as provided in division (C) of this section* certifying that the arrested person was advised of the consequences of his refusal, shall suspend his license or permit to drive, or any nonresidence operating privilege for a period of six months, subject to review as provided in this section; * * * ." (Emphasis added.)

For this Court of Appeals to render a final judgment of suspension, we would be required to find as a matter of law, construing the evidence most favorably in favor of the licensee, that reasonable minds could only conclude that the form was shown to Sylvia Hurbean.

The evidence does not call for such a finding. We hold that the Legislature has made showing the form to the licensee a condition precedent to the existence of refusal, and that the evidence on this issue requires a remand for rehearing.

On this fact issue of whether the form was shown to her, Sylvia Hurbean, the licensee-appellant in the case at bar testified:

"Q. Can you tell us today whether or not you saw a piece of paper like this that evening or whether it was shown to you?

"A. No, sir.

"Q. Did they show you anything?

"A. No, didn't see nothing.

"Q. You didn't see a paper like that?

"A. No.

"Q. Do you know whether or not the officer read something to you from a paper? Do you know whether the officer read anything from a paper?

"A. I can't remember that."

"* * *

"Q. Did you know why they wanted you to take a test?

"A. I don't know why.

"Q. They didn't tell you why?

"A. No, sir.

"* * *

"Q. Do you remember them reading to you from a paper?

"A. No, I don't remember that."

"* * *

"Q. Did he have a piece of paper in front of him or in his hands?

"A. I don't see it."

* * *

"Q. Do you remember him telling you if you didn't take the test, your license would be taken from you?

"A. No, he asked me, would I take the test. I said I know I was drinking.

"Q. And, no one asked you anything about it, or told you anything about it, is that what you are saying?

"A. No, they put me in jail after that over there."

The affidavit filed in Municipal Court containing as a part thereof the form prescribed under R. C. 4511.191 (C), by the Registrar of Motor Vehicles was signed by Patrolman G. S. Skraba, arresting officer, and witnessed by E. E. Schoeneman, Jailer. Pertaining to whether the form was read to and shown to Sylvia Hurbean as required by the provisions of subsections (C) and (D), supra, of R. C. 4511.191, Patrolman Skraba testified that he read it to her, and that Schoeneman did not read it to her.

With reference to showing her the test, Patrolman Skraba testified:

"Q. This form that you use says in bold lettering 'The following must be read and shown to the person under arrest'; isn't that right?

"A. That is what it reads, yes, sir.

"Q. And, you cannot say here today that you showed her a form of this kind, isn't that right?

"A. That is right, I do not remember."

For the foregoing reasons, the judgment is reversed and the cause is remanded to the Canton Municipal Court for further proceedings according to law not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

VAN NOSTRAN, P. J., and RUTHERFORD, J., concur in the syllabus and in the judgment of reversal and remand to Canton Municipal Court for a new trial and further proceedings according to law.