JOSE R. MARTINEZ, APPELLEE, v. HARRY "PETE" PETERSON, DIRECTOR OF MOTOR VEHICLES, ET AL., APPELLANTS.

322 N.W.2d 386

Filed July 16, 1982. No. 44302.

Paul L. Douglas, Attorney General, and Ruth Anne E. Galter, for appellants.

John R. Brogan of Brogan, McCluskey & Wolstenholm, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

The Director of Motor Vehicles appeals from an

order of the District Court for York County, Nebraska, which reversed and set aside an order by the director revoking the operator's license and driving privileges of the appellee for a period of 6 months for failure to submit to a chemical test of his blood or urine. We affirm.

In his petition on appeal to the District Court, Jose R. Martinez alleged that he does not speak or understand the English language and did not understand the explanation of the arresting officer concerning the "Implied Consent Law." Martinez further alleged that the action of the director was erroneous because he was not effectively advised of his rights by the arresting officer because the arresting officer did not explain his rights to him in Spanish and he did not have a written explanation of the implied consent law written in Spanish. Finally, Martinez alleged that he did not refuse to submit to a chemical test of his blood, breath, or urine.

At the trial in the District Court, Martinez moved for the appointment of an interpreter under Neb. Rev. Stat. §§ 25-2401 to 25-2406 (Reissue 1979). Martinez testified that he had been born and raised in Mexico and was 27 years old. At the time of his arrest on August 3, 1980, he was employed at the Sunflower Beef Packing Company in York, Nebraska. Martinez testified that he could not read English nor could he understand the English language except for simple statements spoken slowly. The court found that the appellee satisfied the requirements of § 25-2401, found that an interpreter should be appointed for the purposes of the appeal, and appointed Luciano Medel as interpreter.

On the night of August 3, 1980, Officer Gary D. Underhill of the York Police Department was called to the scene of an accident at Fifth and Lincoln Avenues, York, Nebraska. A witness to the accident gave a description to the officer of a vehicle that had struck a parked vehicle and then left the scene of the

accident. The witness accompanied the officer and identified a vehicle parked at 1204 Lincoln Avenue as the vehicle that had been involved in the accident. Officer Underhill found the appellee asleep in the front seat of the vehicle. Officer Underhill stated that "Mr. Martinez had appeared to be under the influence of alcohol. . . . Mr. Martinez appeared to have been ill because there was vomit within the interior and out the outside door, there was some on his clothing." The officer also testified that there was a strong odor of alcohol and the appellee needed assistance getting out of the car.

At that point Martinez was placed under arrest and transported to the York Police Department. Upon arrival at the police department, Martinez was read the standard implied consent form. In addition to reading the form to Martinez, Underhill attempted to explain in detail Martinez' responsibility to take the chemical test and what the penalties would be if he did not. Officer Underhill testified that the Breathalyzer test was not available so the appellee was given a choice between a blood or urine test. Underhill testified that Martinez' response was that he wanted the officer to make the decision for him. The officer advised Martinez that he could not do so, that Martinez needed to do it himself. Officer Underhill testified that he interpreted Martinez to say that he would not be willing to do anything that would take his license away from him. Underhill also testified that after explaining to the appellee that he would have to make his own decision with regard to which chemical test he would submit to, the appellee responded once again that he wanted the officer to make the decision for him and if the officer did not, he would not make one.

Mr. Martinez was asked on direct examination: "Q. Did you understand that the police officers were asking you to give them a test of your blood or your urine? A. (By Mr. Medel) They were speak-

ing very fast and I cannot understand. Q. Did you understand that giving that test was necessary in order for you to keep your driver's license? A. (By Mr. Medel) No, I did not understand that." Martinez also testified that he quit school at the age of 10 just after finishing his elementary education, which was up to the sixth grade in Mexico.

Martinez was also asked the question, "On the night that the police officer talked to you, did you refuse to permit a test of your blood, breath, or urine? A. (By Mr. Medel) I did not understand them. Q. Did you refuse anything that you understood they were asking you? A. (By Mr. Medel) No."

In Nebraska a conditional or qualified refusal to take a test to determine the alcohol content of body fluids under the implied consent law is not sanctioned by the act and such refusal is a refusal to submit to the test within the meaning of the act. *Wohlgemuth v. Pearson,* 204 Neb. 687, 285 N.W.2d 102 (1979); *Winter v. Peterson,* 208 Neb. 785, 305 N.W.2d 803 (1981).

A refusal to submit to a chemical test occurs within the meaning of the implied consent law when the licensee, after being asked to submit to a test, so conducts himself as to justify a reasonable person in the requesting officer's position in believing that the licensee understood that he was asked to submit to a test and manifested an unwillingness to take it. *Wohlgemuth v. Pearson, supra; Winter v. Peterson, supra.* To constitute a refusal to submit to a chemical test required under the implied consent statute, the only understanding required by the licensee is an understanding that he has been asked to take a test. There is no defense to refusal that he does not understand the consequences of refusal or is not able to make a reasonable judgment as to what course of action to take. *Wohlgemuth v. Pearson, supra; Winter v. Peterson, supra.*

In this case a conflict exists in the evidence as to

whether or not the appellee understood that he was being asked to submit to a test of his blood or urine. In *Zadina v. Weedlun,* 187 Neb. 361, 362, 190 N.W.2d 857, 858 (1971), this court stated: "Where there is irreconcilable conflict in the evidence on a material issue, the reviewing court will, in determining the weight of the evidence of the witnesses, consider the fact that the trial court observed them and their manner of testifying and must have accepted one version of facts rather than the other."

The District Court had the opportunity to see and hear the appellee and Officer Underhill testify. The inability of the appellee to understand and communicate in the English language was observed by the trial court. The fact that a person may understand simple words or statements in English which are spoken slowly does not necessarily mean that he is proficient in the English language. The trial court obviously concluded from the testimony of the appellee that he understood neither that he was being asked to submit to a test nor the consequences of refusing to submit to the test.

The State urges us to adopt the rule in *State v. Hurbean,* 23 Ohio App. 2d 119, 261 N.E.2d 290, 298 (1970), in which the Court of Appeals of Ohio stated: "We hold that a person who voluntarily operates a motor vehicle upon the highways of this state is estopped, in a proceeding under Section 4511.19.1, Revised Code, to assert insufficient language skill to comprehend the request and advice provided in Section 4511.19.1 (C), Revised Code, when received in the statutory manner and form." We are unwilling to adopt such a rule in this state. We believe the appellee in this case did not refuse to submit to a chemical test only because he lacked the understanding that he was being asked to take a test. The appellee's testimony was consistent with what happened when he was arrested. When asked about receiving a letter from the Department of Motor Ve-

hicles on or about August 16, 1980, the appellee testified that he received it but was not able to read it, and that he did not ask anyone to read it to him and he did not understand that there was going to be a hearing on August 26, 1980, in Grand Island, Nebraska. He then received a second letter from the Department of Motor Vehicles containing a copy of the order revoking his driver's license. Again he could not read the letter. Finally, he took the letters to a Catholic priest in York, Nebraska, who could speak and read Spanish. The priest informed the appellee as to the contents of the letters and referred him to local counsel.

The appellants also assigned as error the District Court's failure to grant their motion for new trial. Appellants filed a motion for new trial based on newly discovered evidence. In *Wagner v. Loup River Public Power District,* 150 Neb. 7, 33 N.W.2d 300 (1948), this court stated: "Evidence of facts occurring after a trial ordinarily cannot be made the basis for a motion for a new trial on the ground of newly discovered evidence." (Syllabus of the court.)

"Newly discovered evidence within the purview of [Neb. Rev. Stat. § 25-1142 (Reissue 1979)] is evidence in existence at the time of the trial, but which could not, by reasonable diligence, have been procured." See *Wagner v. Loup River Public Power District, supra* at 11, 33 N.W.2d at 303.

The newly discovered evidence offered by the appellants here was evidence of facts occurring after the trial. Trial was held on November 20, 1980. The facts upon which the appellants base their motion for new trial occurred on December 1, 1980, and are therefore not newly discovered evidence.

For the reasons stated, the judgment of the trial court in setting aside the order of the Director of Motor Vehicles revoking the operator's license and driving privileges of the appellee is hereby affirmed.

AFFIRMED.