THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ZENON WEGIELNIK, Defendant-Appellee.

First District (6th Division)   No. 1—89—0057

Opinion filed October 5, 1990.—Rehearing denied November 7, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Kevin T. Noonan, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The State appeals from an order of the circuit court of Cook County which granted defendant's petition to rescind the statutory summary suspension of his driver's license pursuant to section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). The circuit court held for defendant on the grounds that he had not received the required statutory warnings before suspension because he could not understand the language in which the warning had been given. We affirm.

■ Although defendant has not filed a brief, where the record is simple and issues may be disposed of easily, we may consider the merits of any appeal solely on the appellant's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

On October 12, 1988, defendant Zenon Wegielnik was stopped by police in Kenilworth, Illinois, arrested for driving under the influence of alcohol pursuant to section 11—501(a)(2) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)) and transported to the police station. There an officer read Wegielnik a statement that he must take an intoxilyzer breath test or his driver's license would be suspended. He signed a document refusing to take the test.

On November 2, 1988, defendant filed a petition for rescission of the statutory summary suspension on the grounds that he had not been properly warned under the statute.

At the hearing, Wegielnik testified through a Polish interpreter

that his country of origin is Poland and that he had been in the United States for five years. He said that he is a mechanic, works in a Polish neighborhood, and does not read or write English although he understands it a little bit. He stated that his original Illinois driver's license exam as well as a recent renewal were in the Polish language. Defendant also stated that, when a copy of the warnings was given to him on the night of his arrest, it "was read to me but I didn't know what [the police officer] was saying *** I signed it because I wanted to go home *** I wanted to leave the Police Station; and if I would refuse, I probably would be locked up." Arresting Officer Bennett testified that he conversed with defendant in English, that defendant responded to several questions and eventually refused to take the test. Bennett stated that it was not obvious that English was not the defendant's native tongue. He admitted on cross-examination, however, that defendant spoke with an accent and that his arrest report reflected that in response to some questions defendant gave half answers. Further, in response to the officer's question "Are you ill?" defendant answered, "No, I'm arrested." The trial court then *sua sponte* examined defendant without the aide of an interpreter, stated "I am not convinced that [defendant] understood this warning," and granted defendant's petition to rescind the suspension.

■ Under section 11—501.1 (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1):

"(a) Any person who drives *** upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol *** content of such person's blood ***.

***

(c) A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of such person's privilege to operate a motor vehicle ***."

■ It is settled law that the due process clause applies to the suspension of driving privileges, and any statutory scheme for summary suspension of a driver's license must meet the standards for due process under both the Illinois and United States constitutions. (*In re Summary Suspension of Driver's License of Rakers* (1989), 187 Ill. App. 3d 27, 31-32, 542 N.E.2d 1311.) These standards require a hearing. But, because of the State's great interest in taking intoxicated drivers off the road, the required hearing may be a post-suspension

hearing rather than a presuspension one. *Rakers*, 187 Ill. App. 3d at 32, citing *Mackey v. Montrym* (1979), 443 U.S. 1, 17-19, 61 L. Ed. 2d 321, 333-35, 99 S. Ct. 2612, 2620-21.

█ The State cannot suspend a driver's license without some reasonable grounds to believe that the driver was intoxicated. (*People v. Honaker* (1984), 127 Ill. App. 3d 1036, 1039, 469 N.E.2d 1120.) With reasonable cause, however, the State can require a breathalyzer test and suspend a license pending a post-suspension hearing. See *Honaker*, 127 Ill. App. 3d at 1039-40.

█ Under section 2—118.1(b) (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1(b)), a defendant may request a hearing to determine whether (1) he was arrested for an offense under section 11—501; (2) the arresting officer had reasonable grounds to believe the licensee was driving under the influence; (3) the licensee, "after being advised *** that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse;" or (4) the licensee did submit and the test revealed an illegal concentration of alcohol in his blood.

█ This hearing on summary suspension is a civil one, and the burden of proving grounds for rescission rests on the petitioner. (*People v. Orth* (1988), 124 Ill. 2d 326, 337-38, 530 N.E.2d 210.) Furthermore, Illinois courts have consistently held that section 11—501.1 (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1) "should be liberally construed to accomplish its purpose of protecting the citizens of Illinois upon the highways." *People v. Doty* (1987), 164 Ill. App. 3d 53, 56, 517 N.E.2d 338.

Defendant does not dispute that the arresting officer had reasonable grounds to believe that he was driving under the influence, that he was arrested for that offense, or that he did not submit to a test. The issue is whether defendant can be considered to have refused to submit to a test that he did not understand he was being asked to take.

This question is one of first impression in Illinois.

The court below relied on the standard set by *People v. Niedzwiecki* (1985), 127 Misc. 2d 919, 487 N.Y.S.2d 694, which required a knowing refusal based on a warning in the driver's language "[n]otwithstanding the daily practicalities and the financial and logistical problems involved in preparing the police for all the various languages and dialects that surface in New York." (*Niedzwiecki*, 127 Misc. 2d at 922, 487 N.Y.S.2d at 696.) The court based its ruling on a New York statute which required that a driver be warned about possible license suspension in "clear and unequivocal" language. That case

is distinguishable from the situation here, however, because unlike Illinois the New York statute explicitly required "a showing that the person was given sufficient warning, in clear and unequivocal language of the effect of such refusal and that the person persisted in his refusal." N.Y. Veh. & Trad. Law §1194, par. 4 (McKinney 1988). See also *Commonwealth v. Kyong Rok Yi* (1989), 128 Pa. Commw. 117, 562 A.2d 1008.

The State relies on a Minnesota case, *Yokoyama v. Commissioner of Public Safety* (Minn. App. 1984), 356 N.W.2d 830, in which the court held that the statutory right to refuse consent to testing is limited by reasonableness and that a driver need only understand that he was asked to take a test. In this case, a motorist who spoke only Japanese submitted to a test but later claimed that his consent to a breath test was involuntary because he did not understand the implied-consent warnings. The police had tried to find an interpreter before administering the test. The court held that "finding an interpreter is not absolutely necessary and should not 'interfere with the evidence-gathering purposes of the implied consent statute.' " (356 N.W.2d at 831, quoting *State v. Wiehle* (Minn. 1979), 287 N.W.2d 416, 419.) The court held further that when the defendant applied for and received a Minnesota driver's license, he gave his implied consent to the testing procedures. The court stated:

> " '[T]he only understanding required by the licensee is an understanding that he had been asked to take a test. There is no defense to refusal that he does not understand the consequences of refusal or is not able to make a reasonable judgment as to what course of action [he should] take.' " *Yokoyama*, 356 N.W.2d at 831, quoting *Martinez v. Peterson* (1982), 212 Neb. 168, 171, 322 N.W.2d 386, 388.

See also *State v. Tosar* (1986), 108 Ga. App. 885, 350 S.E.2d 811.

*Yokoyama* is distinguishable because the court found that the defendant did understand that he was being asked to take a test and willingly blew into the machine. In this case, Wegielnik claims that he did not take the test because he did not understand it was required of him.

In *State v. Hurbean* (1970), 23 Ohio App. 2d 119, 261 N.E.2d 290, the licensee claimed that she had refused to take the test because she did not understand why the officers wanted to test her and she did not understand the consequences of refusal. The court examined the implied consent statute of Ohio which, like the Illinois statute, penalizes a licensee who refuses to take the test but does not specify any mental process of this refusal, and then held:

"All the understanding requisite to a refusal to take the test is an understanding that one has been asked to take a test. One who does not understand he has been asked to take a test cannot, of course, be said to have refused to take a test. Whether one who has been asked to take a test has understood that such a request has been made is a question of fact to be determined by the court from all the evidence. *** But an understanding of the consequences of the refusal to take the test is not an element of understanding that a request to take the test has been made, nor a precondition of refusal." *Hurbean,* 23 Ohio App. 2d at 126, 261 N.E.2d at 297.

The Ohio court also found that minimum language skills were inherent in the ability to drive safely and essential to passing the license written exam. On cross-examination, in English, the licensee admitted that she knew she had been asked to take a test but did not understand why. The court held that: "[A] person who voluntarily operates a motor vehicle upon the highways of this state is estopped *** to assert insufficient language skill to comprehend the request and advice provided in [the Ohio consent statute], when received in the statutory manner and form." *Hurbean,* 23 Ohio App. 2d at 127, 261 N.E.2d at 298.

In this case, like in *Hurbean,* the driver refused to take the test. However, the estoppel argument of *Hurbean* does not apply here. In that case, the driver had taken the driver's test in English. Wegielnik, by contrast, has functioned as a driver in Illinois solely with the use of Polish. He was given the Rules of the Road in Polish and took both his initial exam and his renewal in that language. It would be draconian indeed to estop Wegielnik from asserting insufficient language skills under these circumstances.

■ Thus, the estoppel argument does not apply to non-English speaking drivers in Illinois. Public policy in Illinois permits drivers who speak languages other than English to secure a license using those languages at the discretion of the Secretary of State. (Ill. Rev. Stat. 1989, ch. 95½, par. 6—109(b).) In practice the Secretary of State's office provides exams in Spanish, Polish, and Korean, and also allows drivers who speak other languages to bring translators to the exam. Whether this is as it should be is not within our province. We agree that there are benefits from a system which would require a minimum understanding of the English language in order to operate a vehicle in Illinois. Illinois, however, does not have such a requirement.

■ All of the cases we have reviewed here require that a driver understand that he had been asked to take a test. In this case We-

gielnik testified, and the trial court found, that he did not understand that he was being asked to take a test. We must conclude then that the public policy which allows drivers to function absent an understanding of the English language also requires that such a driver cannot have his license suspended for refusing to take a chemical test unless the request for a test was given to him in a language or manner which he understands.

The State also contends that Wegielnik did in fact understand English well enough to comprehend that he was asked to take the breathalyzer test.

The *Martinez* case is similar to the factual situation here. Martinez was asked to take a chemical test and he refused. The trial court found that Martinez did not understand English well enough to understand that the police wanted him to take a test. On appeal, the State contested that fact and the court held:

> " 'Where there is irreconcilable conflict in the evidence on a material issue, the reviewing court will, in determining the weight of the evidence of the witnesses, consider the fact that the trial court observed them and their manner of testifying and must have accepted one version of facts rather than [another].' " (*Martinez*, 212 Neb. at 172, 322 N.W.2d at 388, quoting *Zadina v. Weedlun* (1971), 187 Neb. 361, 362, 190 N.W.2d 857, 858.)

The court held further:

> "The inability of the appellee to understand and communicate in the English language was observed by the trial court. The fact that a person may understand simple words or statements in English which are spoken slowly does not necessarily mean that he is proficient in the English language. The trial court obviously concluded from the testimony of the appellee that he understood neither that he was being asked to submit to a test nor the consequences of refusing to submit to the test." *Martinez*, 212 Neb. at 172, 322 N.W.2d at 389.

In this case, Wegielnik refused to take the test and claimed later that he had not understood that a chemical test was required. At the suspension hearing, the police officer testified that he conversed with Wegielnik in English but also admitted that Wegielnik often gave half answers to the questions. Wegielnik himself testified through an interpreter. The court listened to the testimony, questioned Wegielnik *sua sponte*, and found that he did not understand English well enough to understand what the police wanted him to do.

Finally, the State contends that Illinois courts have consistently

found that a knowing refusal to take the test is not required in many other circumstances and, therefore, a knowing refusal is not required under the facts in this case. In *People v. Goodman* (1988), 173 Ill. App. 3d 559, 527 N.E.2d 1055, police apprehended the defendant after a hit-and-run offense when he appeared dazed from either alcohol or the effects of the accident. He refused to take a blood test when arrested but later argued in court that his mental condition had rendered him incapable of withdrawing his consent. The court stressed the fact that police did have probable cause to stop the defendant. Under those circumstances:

> " 'For the statute to have any meaning, a police officer must be able to rely upon the objective fact of refusal without regard to a suspect's subjective intentions. Voluntary intoxication, or any other condition which might render a refusal "unknowing," cannot save a motorist from the consequences of refusing to be tested for intoxication.' " *People v. Goodman* (1988), 173 Ill. App. 3d 559, 563, 527 N.E.2d 1055, quoting *People v. Kirby* (1986), 145 Ill. App. 3d 144, 147, 495 N.E.2d 656.

A Pennsylvania court, however, has rejected a State argument that failure to understand English is like a physical impairment and, therefore, cannot be used as an excuse for refusing to take the test. In *Kyong Rok Yi*, (128 Pa. Commw. at 119, 562 A.2d at 1009), the court held there is no basis for this contention in case law and the two situations are "obviously different." In Illinois, these two situations are obviously different because drivers can function legally without understanding English but cannot drive legally when too intoxicated or dazed to understand a simple police request.

■ For these reasons, we hold that the State could not properly suspend Wegielnik's driver's license if he did not understand English well enough to comprehend that he had been asked to take a test. Furthermore, we do not find any reason to overturn the factual finding of the trial court that Wegielnik did not understand English well enough to receive the statutory warning.

For these reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.