(No. 71240.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ZENON WEGIELNIK, Appellee.

*Opinion filed October 22, 1992.*

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Randall E. Roberts and Guy L. Miller IV, Assistant State's Attorneys, of counsel), for the People.

Larry A. Davis, of Davis & Riebman, Ltd., of Skokie, for appellee.

CHIEF JUSTICE MILLER delivered the opinion of the court:

The State summarily suspended the defendant's driver's license after he refused to take a breathalyzer test following his arrest for driving under the influence of alcohol (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)). A Cook County circuit judge rescinded the suspension, and the appellate court affirmed (205 Ill. App. 3d 191). The State appeals pursuant to Supreme Court Rule 315 (134 Ill. 2d R. 315).

The defendant was arrested in Kenilworth, Illinois, on October 12, 1988. At the police station, the arresting officer, as required by section 11—501.1(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(c)), advised the defendant that if he did not submit to a breathalyzer test, his driver's license would be summarily suspended for six months. The officer also

warned the defendant that if he took the test and the results disclosed a blood-alcohol concentration of 0.10 or more, his license would be suspended for three months. The defendant signed a statement of the statutory warning, and did not take the test.

The defendant, a native of Poland, had been in this country as a permanent resident for five years before his arrest. He lives in Des Plaines, but works in a Polish neighborhood in Chicago and speaks only Polish on the job. The defendant does not read or write English, and speaks the language "just a little." He studied for and took his driver's license examination in Polish. See Ill. Rev. Stat. 1987, ch. 95½, par. 6—109(b) (providing that such tests may be given in foreign languages at the Secretary of State's discretion).

At a hearing conducted in December 1988, the defendant, claiming that he had not been properly warned as required by the statute, sought to have the suspension of his driver's license rescinded. (See Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1.) The defendant testified through an interpreter, but the trial judge also examined him in English. The judge found that the defendant had a "basic inability to understand the English language" and therefore rescinded the license suspension. The appellate court affirmed the rescission, holding that because the defendant did not understand English well enough to comprehend that he had been asked to take a blood-alcohol test, the State could not suspend his driver's license for refusing to take the test. 205 Ill. App. 3d at 199.

On appeal, the State argues that a motorist suspected of drunken driving need not understand either the request to take a blood-alcohol test or the consequences of refusal in order for his failure to take the test to result in summary suspension. In the alternative, the State argues that a motorist need only understand that he has

been asked to take a blood-alcohol test, and that the defendant in this case at least understood that he had been asked to take such a test.

The defendant maintains that motorists have both a statutory and a constitutional right to have the summary suspension warnings given in a language they understand. He argues that the State may not suspend the driver's license of a motorist who refuses to take a blood-alcohol test when, because of insufficient English language skills, he or she does not understand the consequences of refusing to take the test. The defendant also argues that motorists suspected of drunken driving must, at a minimum, understand that they have been asked to take a breathalyzer test before the State may summarily revoke their driver's licenses upon a "refusal" to take such a test.

We first address the issue of whether motorists have a statutory right to have the summary suspension warnings given to them in a language they understand so that they may appreciate the consequences of refusing to take a blood-alcohol test. In construing a statute, this court first looks to the statutory language to ascertain and give effect to the intent of the legislature. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) Section 11—501.1 of the Vehicle Code, commonly known as the implied-consent law, provides:

> "(a) Any person who drives *** upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol *** content of such person's blood ***. ***
> ***
> (c) A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of such person's privilege to operate a motor vehicle as pro-

vided in Section 6—208.1 of this Code. The person shall also be warned by the law enforcement officer that if the person submits to the test or tests provided in paragraph (a) of this Section and the alcohol concentration in such person's blood or breath is 0.10 or greater, a statutory summary suspension of such person's privilege to operate a motor vehicle, as provided in Sections 6—208.1 and 11—501.1 of this Code will, be imposed." (Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501.1(a), (c).)

Pursuant to section 6—208.1, the period of summary suspension for first offenders is three months if the driver submits to a test that discloses an alcohol concentration of 0.10 or more, and six months if the driver refuses to take the test. Ill. Rev. Stat. 1987, ch. 95½, pars. 6—208.1(a)(1), (a)(2).

The defendant argues that the statutory wording requiring the arresting officer to "warn" motorists implies some subjective understanding on the part of the person so advised. He maintains that if this were not true, the legislature would have mandated only that the officer read a "statement" to motorists. He also asserts that the purpose of the provision requiring warnings is to ensure that those suspected of drunken driving are apprised of the more severe consequences of refusing to take a blood-alcohol test, and that this purpose is not served if drivers cannot understand the warnings.

For the reasons set forth below, we find that the implied-consent statute requires only that the summary suspension warnings be given in order for motorists suspected of drunken driving to have been properly warned. The statute does not require that a motorist understand the consequences of refusing to take a blood-alcohol test before the State may summarily suspend his or her driver's license for failure to take the test.

Our reading of the implied-consent statute reveals no indication that the legislature intended to exempt per-

sons who do not speak English from summary suspension. Unlike the defendant, we do not believe the purpose of the implied-consent statute is to advise drivers as to whether they should take a blood-alcohol test, or to give them a choice between a six- and three-month suspension. The legislature has declared that drivers impaired by alcohol or other drugs pose a threat to public safety and welfare, and that the statutory summary suspension procedures reflect the public policy of this State to deter and remove these "problem drivers" from the highways. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—206.1.) Thus, the overriding purpose of the statutory scheme is to make the highways safer (*Koss v. Slater* (1987), 116 Ill. 2d 389, 395), and the implied-consent statute, being remedial in nature, should be liberally construed to accomplish this goal (*People v. Esposito* (1988), 121 Ill. 2d 491, 501; *People v. Doty* (1987), 164 Ill. App. 3d 53, 56).

The implied-consent statute serves the legislative purpose of promoting highway safety by assisting in the determination of whether drivers suspected of intoxication are in fact under the influence of alcohol. (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 139.) The threat of summary suspension for refusing to take a blood-alcohol test motivates drivers to take the test, thereby allowing the State to obtain objective evidence of intoxication. (*Esposito*, 121 Ill. 2d at 510.) For this reason, it is in the State's best interest for law enforcement officials to fully explain the consequences of refusal. (*South Dakota v. Neville* (1983), 459 U.S. 553, 566 n.17, 74 L. Ed. 2d 748, 760 n.17, 103 S. Ct. 916, 924 n.17.) Mandating that police delay testing while arrangements are made to obtain the services of an interpreter, however, would actually interfere with the law's objectives because the concentration of alcohol in the blood naturally dissipates over time. Moreover, because the vast majority of drivers in this State do speak English, a simple reading of

the warnings serves the evidence-gathering purpose of the statute most of the time. We therefore do not believe the meaning of the word "warn" should be interpreted to require translation of the summary suspension warnings into every language that might be spoken by motorists in this State. See *United States v. Campos-Serrano* (1971), 404 U.S. 293, 298, 30 L. Ed. 2d 457, 462, 92 S. Ct. 471, 474 (if a literal interpretation of a statute is at odds with a clear legislative purpose, a less literal construction must be considered).

Courts in other jurisdictions, interpreting implied-consent statutes much like our own, also have found that the failure of a motorist who does not speak English to understand the consequences of refusing to take a blood-alcohol test is no defense to the summary suspension of his or her driver's license. (See, *e.g., Martinez v. Peterson* (1982), 212 Neb. 168, 322 N.W.2d 386; *Yokoyama v. Commissioner of Public Safety* (Minn. App. 1984), 356 N.W.2d 830; *State v. Hurbean* (1970), 23 Ohio App. 2d 119, 261 N.E.2d 290.) Although Illinois courts have not previously confronted this precise issue, they have, under somewhat similar circumstances, consistently held that a defendant need not understand the consequences of refusing to take a blood-alcohol test before the State may summarily suspend his or her driver's license. (See, *e.g., People v. Kirby* (1986), 145 Ill. App. 3d 144, 146-47; *People v. Carlyle* (1985), 130 Ill. App. 3d 205, 211.) Refusals to take such tests are valid even where drivers are so intoxicated or disoriented because of injuries that they later have no memory of the statutory warnings. *People v. Goodman* (1988), 173 Ill. App. 3d 559, 561; *People v. Solzak* (1984), 126 Ill. App. 3d 119, 123.

In *Solzak*, the appellate court observed that requiring drivers to understand the consequences of refusing to take a blood-alcohol test would allow those who are severely intoxicated to escape the deterrent and retribu-

tive effects of the implied-consent statute. (126 Ill. App. 3d at 122-23.) The appellate court in *Kirby* noted that although the defendant's alleged inability to make a "knowing" refusal in that case stemmed from physical injuries, rather than his apparent intoxication, the absurdity that would be created by sanctioning this defense was no less real. (*Kirby*, 145 Ill. App. 3d at 147.) The court reasoned that, for the implied-consent statute to have any meaning, "a police officer must be able to rely upon the objective fact of refusal without regard to a suspect's subjective intentions. Voluntary intoxication, or any other condition which might render a refusal 'unknowing,' cannot save a motorist from the consequences of refusing to be tested for intoxication." *Kirby*, 145 Ill. App. 3d at 147.

The same reasoning applies here. We find no meaningful distinction between a motorist who cannot comprehend the statutory warnings because of injury or intoxication, and one who does not understand them due to insufficient English language skills. The legislature has created no exception in the implied-consent law for motorists who do not speak English, and this court will not read into the statutory language a requirement that law enforcement personnel warn motorists suspected of drunken driving in whatever language they may speak. We find, therefore, that the defendant had no statutory right to have the warnings read to him in a language other than English, even though this may have prevented him from understanding the consequences of refusing to take the breathalyzer test.

The defendant next argues that due process (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) requires that a driver understand the consequences of refusing to take a breathalyzer test. This argument is without merit.

The legislature has by statute granted drivers the right to refuse to take a blood-alcohol test, but only on

the condition that their driving privileges be automatically suspended. This "right" is not constitutionally mandated. (*In re Summary Suspension of Driver's License of Rakers* (1989), 187 Ill. App. 3d 27, 32.) Instead, a defendant's statutory right to refuse to take such a test is "simply a matter of grace" bestowed by the legislature. (*South Dakota v. Neville*, 459 U.S at 565, 74 L. Ed. 2d at 760, 103 S. Ct. at 923.) Due process does not require that police warn drivers of the consequences of refusing to take a blood-alcohol test pursuant to an implied-consent statute. (*People v. Honaker* (1984), 127 Ill. App. 3d 1036, 1039, citing *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826; *Rakers*, 187 Ill. App. 3d at 32.) Because due process does not require that the summary suspension warnings be given at all, it does not require that they be given in a language the defendant understands.

The defendant also argues that the implied-consent law violates the equal protection clauses of the State and Federal Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). He claims the law creates a suspect classification by distinguishing between English-speaking and non-English-speaking persons. This distinction, he says, is "logically and practically" based on ethnic background or national origin, and therefore must be subjected to strict judicial scrutiny. We disagree.

The defendant has cited no authority for the proposition that classifying drivers as to whether or not they speak English is suspect, or that discrimination on the basis of language skills constitutes discrimination on the basis of national origin. Even assuming this were true, however, the defendant has failed to show that any classification, suspect or otherwise, is created by the statute.

In order for a court to subject a statute to any form of equal protection review, the party challenging the law must show that it classifies persons in some manner. (2

R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance & Procedure §18.4, at 343-44 (1986).) The implied-consent law creates no classification on its face. Instead, the statute is a neutral law that may have a disparate impact on drivers who do not understand English. Therefore, to present a cognizable equal protection claim, the defendant must show that the statute was enacted for a discriminatory purpose. *Personnel Administrator of Massachusetts v. Feeney* (1979), 442 U.S. 256, 272, 60 L. Ed. 2d 870, 883, 99 S. Ct. 2282, 2292.

To establish that a law neutral on its face stems from a discriminatory purpose, the party challenging it must show that the legislature selected a course of action not merely "in spite of" its disparate impact on an identifiable group, but *because of* an anticipated discriminatory effect. (*McCleskey v. Kemp* (1987), 481 U.S. 279, 298, 95 L. Ed. 2d 262, 282, 107 S. Ct. 1756, 1770.) The defendant has presented no evidence, and has not alleged, that the legislature enacted the implied-consent law in anticipation of any discriminatory effects it may have on drivers who do not speak English. We therefore reject his equal protection claim.

In sum, we hold that neither the implied-consent statute, nor the State or Federal Constitutions, require that a motorist arrested on suspicion of drunken driving understand the consequences of refusing to take a blood-alcohol test. The State, therefore, need not warn such a driver of the consequences of his or her decision in any language other than English.

Finally, the defendant argues that, even if a motorist does not have to understand the consequences of refusal, he must at least understand that he has been asked to take a breathalyzer test before the State may summarily suspend his driver's license. The State counters that motorists need not understand that they have been asked to

take a breathalyzer test before their licenses may be suspended upon refusal, and that, in any case, this defendant understood that he had been asked to take such a test.

We agree with the State that the defendant did in fact understand that he had been asked to take a breathalyzer test. Our disposition of this factual question makes it unnecessary for us to reach the issue of whether the State may suspend the driver's license of a motorist who "refuses" to take a test that he does not understand he has been asked to take. Although we express no opinion on that issue, we note that even suspects who do not speak or understand English may nonetheless be capable of cooperating with police who demonstrate how the breathalyzer test is taken. See *Yokoyama v. Commissioner of Public Safety* (Minn. App. 1984), 356 N.W.2d 830 (motorist who spoke only Japanese complied with request to take test).

The appellate court, citing cases from other jurisdictions, held that a motorist suspected of drunken driving must at least understand that he has been asked to take a test. The court also stated that it found no reason to overturn the trial judge's factual finding that the defendant did not understand that he was being asked to take a test. (205 Ill. App. 3d at 198-99.) The State argues that the trial judge's finding on this issue was against the manifest weight of the evidence.

At the outset, we note that the record in this case contains no express finding as to whether the defendant understood that he was being asked to take a test, or whether he simply did not understand the consequences of refusal. The trial judge, unlike the appellate court, did not separate the defendant's level of understanding into these two categories, but instead made a general finding that, because of his limited knowledge of English, the defendant had not been properly warned. The record

clearly shows, however, that while the defendant may not have understood the consequences of refusal, he understood that he was being asked to take a test.

The defendant admitted during the summary suspension hearing that he has taken some formal English language lessons. He conversed with the arresting police officer entirely in English, and complied with several of the officer's requests. The defendant produced his driver's license when the officer asked for it. When the officer asked the defendant to get out of his car, he did so. The defendant was able to attempt two field sobriety tests at the officer's instruction. The officer testified that he "partially" demonstrated how the tests were to be performed, but that he did so only because he was trained to conduct the tests in that manner and not because he thought the defendant did not understand the verbal instructions.

The officer testified that, at the police station, he asked the defendant to take a breathalyzer test and the defendant said that he would. After the 21-minute waiting period, the defendant stepped up to the breathalyzer machine. The officer testified that while he was explaining how the test is taken, the defendant began asking questions about the test and what the officer thought would be "the best thing for him" to do. The officer said the defendant "started asking me questions as to 'do you think I should do this? Come tell me what to do.' I told him I could not tell him; it had to be his decision." The defendant then refused to take the test.

The defendant testified that he could not recall whether he had asked the officer if he should take the test. The defendant also stated that if he had known that his driver's license was going to be suspended for six months if he refused to take the test, he would have taken it.

It would be unreasonable to conclude from this evidence that the defendant did not understand what the officer wanted him to do when he asked him to step up to the breathalyzer machine. The defendant was able to follow directions and respond to questions up until that point. The defendant understood that he was being asked to take a test, which is, at most, all that the law requires. We therefore hold that the defendant was properly warned, and that the State was justified in summarily suspending his driver's license upon his refusal to take the test.

Accordingly, the judgments of the appellate and trial courts are reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*