THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HERBERT GOODMAN, Defendant-Appellant.

Third District   No. 3—87—0502

Opinion filed August 16, 1988.

John C. Renzi, of McDermott & McDermott, Ltd., of Joliet, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

The trial court denied defendant Herbert Goodman's petition to rescind the summary suspension of his driver's license. The defendant appeals.

At the hearing on the defendant's petition, Will County Sheriff's Deputy Greg Jarrette testified that on May 5, 1987, he responded to a report that citizens had stopped a driver who had committed a hit and run offense. Upon arriving at the scene, the deputy learned that the apprehended driver was the defendant. Deputy Jarrette obtained the defendant's driver's license, then asked him to exit his car. The deputy noted that the defendant appeared dazed, smelled strongly of alcohol, and seemed to have difficulty understanding questions. Jarrette further noted that the defendant had a bump on his head, was holding his side, and needed assistance walking. The defendant did not respond when asked if he was hurt. Deputy Jarrette could not tell whether the defendant was dazed from alcohol or from the accident. Worried that the defendant might fall into oncoming traffic, the deputy handcuffed him and put him in the backseat of his squad car.

Illinois State Police Trooper Richard Porter testified that he arrived at the scene after Deputy Jarrette had placed the defendant in his squad car. He noticed that the defendant smelled of alcohol, appeared dazed and required assistance in getting into an ambulance Jarrette had summoned.

Trooper Porter further testified that he first arrested the defendant at the hospital, charging him with driving under the influence of alcohol, failing to reduce speed to avoid an accident, and leaving the

scene of a personal injury accident. Porter admitted, however, that the defendant was not free to leave prior to his formal arrest. Upon formally arresting the defendant, Porter read him the implied consent motorist's warning. The defendant stated he understood the warning. The trooper then asked the defendant to submit to a blood test, but the defendant refused.

The defendant's son, Michael Goodman, testified that he joined his father at the hospital following the accident. In Michael's presence, the treating physician explained to the defendant several times that he should stay in the hospital overnight for observation, because he probably had a concussion and broken ribs. When the defendant did not appear to understand, the doctor asked Michael to explain it to him. Michael further noted that when the defendant was admitted to the hospital, he was unable to answer basic health history questions, so Michael provided the information.

The defendant testified that he recalled nothing following the accident, until he awoke in the hospital about 4 a.m. on May 6. In particular, he did not recall hearing the implied consent motorist's warning, nor did he recall refusing a blood test. According to the defendant, his injuries from the accident included a concussion and five broken ribs.

The trial court denied the defendant's petition to rescind his statutory summary suspension. The court further denied the defendant's motion to quash the arrest.

On appeal, the defendant has fractionalized his first issue into numerous subarguments. We note, however, that it raises only the basic questions of when the defendant was arrested and whether there was probable cause for the arrest.

■ Circumstances leading a reasonable man, innocent of any crime, to conclude that he is not free to leave provide evidence that he has been arrested. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) Such circumstances include the continuing possession of the individual's driver's license by a police officer (*People v. Hardy* (1986), 142 Ill. App. 3d 108, 491 N.E.2d 493), the handcuffing of the individual, and the placing of the individual in a squad car (*People v. Rodriquez* (1987), 153 Ill. App. 3d 652, 505 N.E.2d 1314). The duration of the individual's detention also bears on whether the stop is merely investigatory or constitutes an arrest. *People v. Dyer* (1986), 141 Ill. App. 3d 326, 490 N.E.2d 237.

■ In the instant case, Deputy Jarrette immediately obtained the defendant's driver's license and kept it. The deputy then handcuffed the defendant, put him in the squad car and left him there until an

ambulance arrived. Under the circumstances, we find that a reasonable person would have believed he was not free to leave. In fact, Trooper Porter testified that the defendant was not free to leave before the trooper had formally "arrested" him at the hospital. We conclude that the defendant was actually arrested when Deputy Jarrette placed him in the squad car.

■ Turning to the question of whether probable cause existed for the arrest, we note that probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. *People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228.

■ Here, two witnesses told Deputy Jarrette that the defendant had committed a hit and run offense. The condition of the defendant and his car corroborated their reports. Further, the defendant smelled strongly of alcohol, had trouble standing and was generally uncooperative. We find that a man of reasonable caution would have been warranted in believing that the defendant had committed the offenses of leaving the scene of an accident and driving under the influence of alcohol. Accordingly, Deputy Jarrette had probable cause to arrest the defendant.

The defendant further argues on appeal that his mental condition rendered him incapable of withdrawing his consent for a blood test.

Section 11—501.1 of the Illinois Vehicle Code provides in pertinent part:

"(a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of Section 11—501.2, to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol, other drug, or combination thereof content of such person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11—501 or a similar provision of a local ordinance. The test or tests shall be administered at the direction of the arresting officer. The law enforcement agency employing said officer shall designate which of the aforesaid tests shall be administered.

(b) Any person who is dead, unconscious or who is otherwise in a condition rendering such person incapable of refusal, shall be deemed not to have withdrawn the consent provided by paragraph (a) of this Section and the test or tests may be administered, subject to the provisions of Section 11—501.2.

(c) A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of such person's privilege to operate a motor vehicle as provided in Section 6—208.1 of this Code." Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1.

■ In Illinois, the refusal to take a chemical test for blood-alcohol content need not be knowingly made. (*People v. Solzak* (1984), 126 Ill. App. 3d 119, 466 N.E.2d 1201.) The courts have found an effective refusal to submit to testing, even in the absence of an express refusal, where the driver was so intoxicated at the time he was requested to take the test that he could not even comprehend the request (*People v. Carlyle* (1985), 130 Ill. App. 3d 205, 474 N.E.2d 9), and where the driver was so intoxicated that he later had no memory of the request (*People v. Solzak* (1984), 126 Ill. App. 3d 119, 466 N.E.2d 1201).

Further, in a case quite similar to the instant defendant's, the Fourth District stated:

"Although the present defendant's alleged inability to make a 'meaningful' refusal stems from his injuries rather than his apparent intoxication, the absurdity we would create by accepting his argument is not less real. For the statute to have any meaning, a police officer must be able to rely upon the objective fact of refusal without regard to a suspect's subjective intentions. Voluntary intoxication, or any other condition which might render a refusal 'unknowing,' cannot save a motorist from the consequences of refusing to be tested for intoxication." *People v. Kirby* (1986), 145 Ill. App. 3d 144, 147, 495 N.E.2d 656, 658.

While we agree with the basic reasoning of *Kirby*, we find it necessary to add a proviso to avoid any misunderstanding. As noted, section 11—501.1(a) of the Vehicle Code sets forth the prerequisite for summary suspension that the defendant must have been arrested for driving under the influence. This, of course, requires that the arresting officer have probable cause to believe that the defendant was driving under the influence. Accordingly, while a casual reading of *Kirby* might conjure up nightmares of sober, but dazed accident victims having their driver's licenses summarily suspended because they unknowingly refused an alcohol content test, such may not happen. Objective evidence of intoxication must always underlie the State's request for an alcohol content test.

■ In the instant case, apart from the defendant's dazed appearance and walking problems, which could have been occasioned by his

injuries, the defendant smelled strongly of alcohol. The State therefore had a proper basis for requesting an alcohol content test. Accordingly, pursuant to *Kirby*, we find unpersuasive the defendant's argument that his express refusal was not meaningful.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.