THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RALPH PRESTON, JR., Defendant-Appellant.
Third District   No. 3—89—0290

Opinion filed November 13, 1990.

Braud/Warner, Ltd., of Rock Island (Michael L. Wassell, of counsel), for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (Rita Kennedy

Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Defendant, pursuant to Supreme Court Rule 605(a) (107 Ill. 2d R. 605(a)), appeals from a final judgment and sentencing order entered May 5, 1989, wherein the trial court found defendant guilty of two counts of reckless homicide and sentenced him to a term of five years in the Illinois Department of Corrections. Within defendant's appeal, he also objects to certain orders denying his motion to suppress evidence and his confession and motion to quash arrest. The conviction herein was based on stipulated facts presented to the court without the aid of a jury. No issues are raised on the pleadings.

The stipulated statement of facts presented to the court stated the following:

"Rock Island County Deputy Steve Dean would testify that on June 11, 1988, at 2:34 A.M., he arrived at the scene of a two-car collision. The collision occurred in Rock Island County, Illinois. Deputy Dean observed a 1982 Chevrolet pickup truck which the defendant had been driving lying on its side on Route 92. A 1983 Ford Escort was located north of Route 92. In the Ford Escort were Shirley Jean Skinner and Edith Alberta Call, who were pronounced dead at the scene of the collision.

The defendant informed Officer Dean that he had been eastbound on Route 92 and the Ford Escort crossed the center line and struck him. Officer Dean detected a strong odor of alcohol on defendant's breath[;] however, defendant was coherent. No field sobriety tests were performed nor did Deputy Dean observe any physical trait indicating intoxication. Preliminary investigations at the scene indicated that defendant was eastbound on Route 92, and the Ford Escort was westbound. The gouge marks in the pavement, the damage of the vehicles, and the location of the vehicles, suggested that contrary to the defendant's statement, the point of impact was in the victim's westbound lane. Deputy Dean requested and received the defendant's driver's license and wallet at the scene and because of a head injury the defendant was transported by ambulance to Muscatine General Hospital, Muscatine, Iowa. Deputy Dean would testify that if the defendant was not transported by ambulance from the scene, the defendant would not have been free to leave the area.

At the hospital, at 3:53 A.M., Deputy Dean advised the defendant he was under arrest for driving under the influence of alcohol, advised the defendant of his constitutional rights and read to the defendant the [warning to motorist]. Deputy Dean requested that the defendant submit to a blood test and the defendant voluntarily consented to the blood test. Deputy Dean observed Lab Technician Alexa Wojtechi draw blood from the defendant. After Wojtechi drew the blood, Deputy Dean observed her seal the sample in a styrofoam container. Wojtechi then handed the sealed sample to Deputy Dean. Deputy Dean subsequently transported the blood sample to the Rock Island County Sheriff's Department and placed it in an evidence locker.

Geneva Anderson would testify as a witness for the people. She would testify that she observed the victims in the 11th Street Point Tavern shortly before the collision. The women often socialized in the establishment. Neither woman ever drank alcohol, and neither woman drank alcohol on the night in question. When the women left at their regular time of 1:30 A.M., they were not fatigued.

Lorri Vargus would testify as the next witness for the people. She would testify that she was working as a bartender at the Mississippi Brewing Company on June 10, 1988, between 6:30 P.M and 12:30 A.M. She would further testify that she was familiar with the defendant since he had frequented the establishment on previous occasions. The defendant usually drank a lot. When she last saw him at approximately 10:30 P.M. on June 10, 1988, the defendant was intoxicated.

Doctor David Gierlus would testify that he was defendant's attending physician at Muscatine General Hospital on the morning in question. Doctor Gierlus detected an odor of alcohol on defendant's breath. Doctor Gierlus would also testify that none of the medical treatment administered to the defendant would have affected the accuracy of the blood-alcohol test.

Melody McMillan would also testify that she was defendant's attending nurse at Muscatine General Hospital on the morning in question and that she detected the smell of alcohol on defendant's breath.

Alexa Wojtechi would testify that she is a qualified laboratory technician and that she drew the defendant's blood following the procedures outlined in Chapter 95½ on June 11, 1988, 4:20 A.M. at Muscatine General Hospital. She would fur-

ther testify that after drawing the blood she sealed the sample in a styrofoam package and gave it to Deputy Dean of the Rock Island County Sheriff's Department.

Rock Island County Investigator Sherman Powell would testify that on June 13, 1988, he removed the defendant's sealed blood sample from an evidence locker at the Rock Island County Sheriff's Department and transported it to the Moline Public Hospital where he handed it to Stella Entsminter.

Stella Entsminter would further testify that on June 13, 1988, she received the defendant's sealed blood sample from Investigator Powell. She would further testify that she is a trained lab technician qualified as an expert in blood analysis. On June 13, 1988, she tested the defendant's blood sample and blood alcohol content was .219.

In addition to the testimony offered to establish the defendant's intoxication, the People would also present evidence to establish that contrary to the defendant's claim that the victims' vehicle crossed the center line, the defendant's vehicle actually did. Deputy Andress would testify that she took preliminary measurements at the scene of the collision and recorded the measurements. She would also testify that she observed the vehicles involved in the collision and the victims of the collisions who suffered massive head and chest injuries. She would further testify that on June 15, 1988, she relayed all the information she had gathered to Deputy VanWolvelaere. She would also testify that together with Deputy VanWolvelaere she made further measurements and examinations of the defendant's and victims' vehicles.

Deputy VanWolvelaere would testify that on June 15, 1988, he assisted Deputy Andress in the investigation of the instant collision. He would further testify that he and Deputy Andress measured and examined the defendant's vehicle and the victims' vehicle. Deputy VanWolvelaere also photographed the vehicles. On June 16, 1988, Deputy VanWolvelaere returned to the scene of the collision and attempted to find physical evidence to substantiate the defendant's prior statement. No such evidence could be found. Deputy VanWolvelaere also re-examined the vehicles involved in the collision. Based on his training and observations Deputy VanWolvelaere would further testify that in his opinion the collision occurred in the westbound lane when defendant's vehicle crossed the centerline and struck the victims' vehicle.

Additionally, Illinois State Trooper VanDaele would testify that he is an expert in accident reconstruction. He would further testify that after examining all the physical evidence including the measurements and photographs taken by Deputies Andress and VanWolvelaere he determined that the point of impact was in the victims' westbound lane. He further determined that in his expert opinion the victims' automobile never left its lane before or during the collision. In his expert opinion the defendant's truck crossed the centerline and entered the victims' lane causing the collision.

Finally, Rock Island County Coroner Richard Verbeck would testify that Edith A. Call and Shirley J. Skinner were pronounced dead at the scene following the two-vehicle collision in Rock Island County, Illinois. The primary cause of death for each woman was massive head, chest and internal injuries. Coroner Verbeck would further testify that the lab reports indicated that neither victim had any alcohol or drugs present in her blood."

On October 14, 1988, defendant filed a motion to suppress evidence and motion to suppress confession and motion to quash arrest. After hearing testimony and arguments on November 17, 1988, the trial court, by order dated December 22, 1988, denied defendant's motions. Subsequently, the above-mentioned statement of facts was submitted to the court. Defendant again moved to suppress evidence and confession, which was denied. The trial court found defendant guilty based on the stipulation of facts.

■■■ Defendant first asserts the trial court erred in denying the motions to suppress evidence, suppress confession and quash the arrest. To this point defendant states the police officer had no probable cause to arrest defendant for driving under the influence. Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." (*People v. Goodman* (1980), 173 Ill. App. 3d 559, 562, 527 N.E.2d 1055.) In *Goodman*, the court determined that probable cause existed for an arrest of driving under influence where two witnesses observed the defendant commit a hit-and-run offense, the defendant had a strong odor of alcohol on his breath, had trouble standing and was dazed, although the police officer could not determine whether the defendant was dazed from the alcohol or the accident. (*Goodman*, 173 Ill. App. 3d 559, 527 N.E.2d 1055.) Probable cause for the arrest existed in this case because the

officer came upon a serious traffic accident in the early morning hours, was told by defendant that the other vehicle crossed the center line and hit his vehicle when the object evidence appeared otherwise, and there was an odor of alcohol on defendant's breath which was noticed by the officer as well as other emergency personnel.

■■■ Defendant further states that the arrest was illegal because it occurred in Iowa. At the hearing on defendant's motions, the officer testified that defendant was not physically arrested until at the hospital in Muscatine, Iowa. Therefore, under Iowa law, defendant argues the officer had no authority to arrest defendant, since he was not being arrested for a felony nor was the officer in hot pursuit of defendant. However, at the scene the officer did take defendant's wallet and driver's license and testified that if the defendant had tried to leave on his own, he would not have been free to go. Defendant asserts that merely seizing a person's wallet and driver's license without any other type of restraint cannot be considered an arrest. An arrest occurs when the officer intends to arrest, the defendant believes he is under arrest and the defendant is in actual or constructive custody. (*People v. Clark* (1956), 9 Ill. 2d 400, 137 N.E.2d 820.) No formal declaration of arrest is necessary for an arrest to occur. (*People v. Brown* (1980), 81 Ill. App. 3d 271, 401 N.E.2d 310.) In *Goodman,* the court determined a defendant was actually arrested at the scene even though the traffic tickets were not issued until later at a hospital. The court's basis for this was that the defendant would not have been free to go had he not been injured. Moreover, the police officer took the defendant's driver's license and locked him into the squad car for his personal safety. (*Goodman,* 173 Ill. App. 3d 559, 527 N.E.2d 1055.) Defendant herein distinguishes *Goodman* solely on the basis that in *Goodman* the defendant was physically restrained. We do not believe that distinction has merit. In *Goodman* the evidence showed the defendant to be disoriented and in need of restraint for his personal safety. Such restraint of defendant in this case did not appear necessary. The key factor in both *Goodman* and this case is that, but for the injuries suffered which required transport to a hospital, neither respective defendant would have been free to go under the circumstances presented. We have no reason to disbelieve the officer's testimony in this case that defendant would not have been free to go. Defendant was constructively in custody at the scene.

■■ Having decided the arrest occurred in Illinois, we must decide whether the officer lawfully crossed State lines to conclude the arrest and provide the Illinois implied consent warning to motorists for purposes of obtaining a blood test to check defendant's blood-alcohol

level. There is no dispute that the seizure of blood pursuant to the implied consent law mandates that lawful arrest precede the request for the blood test. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501; *People v. Ellerbusch* (1983), 118 Ill. App. 3d 500, 454 N.E.2d 1166.) Defendant's argument is premised solely upon the illegality of the arrest. Having already determined that the arrest was legal, we find no merit to defendant's argument. Moreover, since we consider the arrest to have occurred in Illinois, we believe the officer correctly followed Illinois implied consent law procedure even though the warnings were given and the blood was drawn in Iowa. The transport of defendant across State lines was merely fortuitous and should not work to clear defendant of the charges.

Defendant similarly argues that any statements made by defendant after the illegal arrest are inadmissible as "fruits of a poisonous tree." Again, however, since we have determined the arrest to be legal, we again find defendant's argument to be without merit.

■ Secondly, defendant argues that the stipulated evidence presented at trial was insufficient to prove defendant guilty beyond a reasonable doubt. Basically defendant argues that the evidence failed to show beyond a reasonable doubt the cause of death of the victims in the other car. We disagree. The coroner testified that both victims were pronounced dead at the scene from massive head, chest and internal injuries. This evidence, coupled with defendant's statement that an accident occurred and corroborated by reconstruction evidence, is sufficient to find that the accident was the cause of death of the two victims. Defendant has made no assertion that the deaths could be attributable to any other cause. It is not necessary to have specific medical testimony pursuant to an autopsy when other evidence is sufficient to prove causation. There simply is no other reasonable explanation as to how these two victims died. When the facts adduced show by common knowledge and experience a direct association between the accident and the deaths, no technical explanation of death is necessary. (*People v. Tostado* (1981), 92 Ill. App. 3d 837, 416 N.E.2d 353.) We therefore find defendant's argument without merit.

For all of the foregoing reasons, the decision of the trial court is affirmed and the cause is remanded to the trial court for the issuance of the mittimus.

Affirmed and remanded.

HEIPLE, P.J., and STOUDER, J., concur.