ALAMO RENT A CAR, INC., Plaintiff-Appellee, v. GEORGE H. RYAN, Defendant (Jim Edgar, as Governor, Contemnor-Appellant).

First District (5th Division)  Nos. 1—91—2347, 1—92—1754 cons.

Opinion filed December 2, 1994.

MURRAY, P.J., dissenting.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, of counsel), for appellant.

Roland W. Burris, *Attorney General, of Chicago* (Rosalyn B. Kaplan, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of counsel), for George H. Ryan.

Dean A. Dickie, William R. Quinlan, and Raymond F. Benkoczy, all of Pope & John, of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Alamo Rent A Car, Inc., appeals from the trial court order granting summary judgment in favor of defendant Secretary of State George H. Ryan (Secretary) on its action seeking declarations that certain amendments to section 6—305 of the Illinois Vehicle Code (Code) (625 ILCS 5/6—305(d), (f) (West 1992)) were unconstitutional. In addition, Governor Jim Edgar filed a separate appeal from a contempt citation in which the trial court imposed a $100 fine and ordered him to turn over certain documents, which related to the Alamo suit, pursuant to a subpoena *duces tecum*. These appeals were consolidated. We affirm the trial court order granting summary judgment in favor of the Secretary, but we vacate the contempt order which required the Governor to turn over certain documents and imposed a fine for his failure to do so.

Plaintiff filed this declaratory judgment action claiming that sections 6—305 (d) and (f) of the Code violate the special legislation clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13), the equal protection and due process clauses of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) and the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV). In addition, plaintiff claimed that subsection (d) also violates the jury trial clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 13), and that subsection (f) also violates the first amendment of the United States Constitution. U.S. Const., amend. I.

Section 6—305(d) imposes a $200 cap on the amount of damages which a car rental company may recover from a rental car driver for negligently caused damage to a rental vehicle. There are exceptions to the rule when the damages occur from intentional acts, intoxication, speed contests, fraud by renter, crime towing or unauthorized use. 625 ILCS 5/6—305(d) (West 1992).

Section 6—305(f) requires that quoted and advertised rental charges be the full amount of all charges, except for a limited few exceptions which may be added to the daily rental rate. Under section 6—305(f), all charges must be bundled into the advertised rental rate. Subsection (f) particularly prohibits a person from charging, in addition to taxes and mileage and the advertised rental rate, required fuel and airport surcharges or transportation fees. Subsection (f) further states:

"No collision damage waiver, or any other type of waiver or insurance, may be offered and sold as a separate charge which would provide coverage for a deductible and any of the exceptions authorized by subsection (d) of this Section." (625 ILCS 5/6—305 (f) (West 1992).)

The Secretary claims that this provision bans the sale of collision damage waivers (CDWs). Alamo argues that the provision does not ban the sale of CDWs but, rather, prohibits charging for a CDW in addition to the advertised rental rate. We agree with the trial court that Alamo's interpretation of this provision is correct.

In the course of Alamo's discovery, the trial court granted Alamo's motion to enforce a subpoena *duces tecum* which had been previously served upon Deputy Governor John E. Washburn. Ultimately, Alamo filed a petition for rule to show cause why Governor James Thompson should not be held in contempt on the basis of then Governor Thompson's, and subsequently, Governor James Edgar's, refusal to produce documents required by the subpoena. The trial court cited Governor Edgar for contempt, imposed a $100 fine and ordered him to produce the documents. Governor Edgar has not complied with the trial court's order and has filed this appeal from the contempt order. Alamo and the Secretary each filed motions for summary judgment on the declaratory judgment action and the court entered an order finding sections 6—305(d) and (f) constitutional and granting the Secretary's motion, dismissing all of Alamo's claims. Alamo appeals from that order.

The issues raised on appeal are whether the trial court properly granted summary judgment in favor of the Secretary on the basis that the bundled charge and $200 cap provisions are constitutional as a matter of law. Specifically, we must determine whether: (1) the bundled charges provision violates the special legislation, equal protection, and due process clauses and the first amendment and (2) whether the $200 cap provision violates the special legislation, equal protection, due process, and jury trial clauses. We must also determine whether the trial court properly required the Governor to turn over certain documents, and held him in contempt and imposed a fine for his failure to do so.

We first consider whether the trial court properly granted summary judgment in favor of the Secretary. Both the Secretary and Alamo filed cross-motions for summary judgment seeking the resolution of this case as a matter of law. It is clear from an examination of these motions that there are no disputed facts material to resolve the issue of the constitutionality of section 6—305.

A strong presumption of constitutionality attaches to legisla-

tive enactments. (*People v. Blackorby* (1992), 146 Ill. 2d 307, 586 N.E.2d 1231.) The party who challenges a statute's constitutionality bears the burden of clearly establishing the violation alleged. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 497 N.E.2d 763.) Courts are obligated to affirm the constitutionality and validity of statutes if possible. *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 251 N.E.2d 253.

■ Both Alamo and the Secretary agree that Alamo's claims do not implicate suspect or quasi-suspect classifications. The parties also agree that the same standard applies to the special legislation and equal protection claims. (*Nevitt v. Langfelder* (1993), 157 Ill. 2d 116, 623 N.E.2d 281.) The parties are, however, in dispute over what standard to apply in determining whether section 6—305 violates the equal protection, special legislation and due process clauses. Alamo claims that the rational basis plus standard applies, which requires the court to determine not only whether there is a reasonable relationship between the challenged legislation and the governmental interest, but also whether the means employed by the regulation substantially relates to the stated purpose for the regulation. The Secretary claims that the traditional rational basis standard applies.

It is well settled that when a statute does not affect a fundamental right or involve a suspect or quasi-suspect classification, the appropriate standard for review under the equal protection and special legislation clauses is the traditional rational basis test. (*Cutinello v. Whitley* (1994), 161 Ill. 2d 409.) The rational basis test requires that there be a reasonable relationship between the challenged legislation and a conceivable and perhaps unarticulated governmental interest. *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 531 N.E.2d 1.

■ A similar standard is applied to Alamo's due process claim. The rational basis test applies where it is claimed that substantive due process is violated by an unreasonable and arbitrary exercise of the State's police power. (*People v. Lindner* (1989), 127 Ill. 2d 174, 535 N.E.2d 829.) Under this test, the court should: (1) identify the public interest that the statute is intended to protect; (2) examine whether the statute bears a reasonable relationship to that interest; and (3) determine whether the method used to protect or further that interest is reasonable. *Lindner*, 127 Ill. 2d at 180.

■ A legislative decision is not subject to courtroom factfinding and may be based on rational speculation unsupported by admissible evidence or empirical data. (*Cutinello v. Whitley* (1994), 161 Ill. 2d 409.) Under the rational basis test, the court may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate

the legislative action. (*Illinois Health Care Association v. Department of Public Health* (7th Cir. 1989), 879 F.2d 286.) Because the court may on its own initiative articulate the facts necessary to justify the legislation, the question of whether the legislation is constitutional is a question of law for the court to determine. (*Szczurek v. City of Park Ridge* (1981), 97 Ill. App. 3d 649, 422 N.E.2d 907.) If there is any conceivable basis for finding a rational relationship, the law will be upheld. (*People v. Hamm* (1992), 149 Ill. 2d 201, 595 N.E.2d 540.) It is the burden of the person attacking the legislation to negate every conceivable basis which supports it. (*Doolin v. Korshak* (1968), 39 Ill. 2d 521, 236 N.E.2d 897.) Whether a statute is wise or whether it is the best means to achieve the desired result is a matter left to the legislature, and not the courts. *People v. Shephard* (1992), 152 Ill. 2d 489, 605 N.E.2d 518.

■ In applying the rational basis test to Alamo's equal protection, special legislation and due process claims, we must first consider the public interest to be protected by subsections (d) and (f). Alamo contends that since section 6—305 is part of the Illinois Vehicle Code, the purpose of subsections (d) and (f) must be the safe and legal operating, possessing or owning of a vehicle. In support of this argument, Alamo relies on *People v. Lindner* (1989), 127 Ill. 2d 174, 535 N.E.2d 829. However, *Lindner* did not address the sections of the Code at issue here, which regulate deceptive practices in the car rental industry. Furthermore, the court is not confined to the purpose articulated in the Code, but may find any plausible purpose supporting section 6—305. See *Illinois Health Care Association v. Illinois Department of Public Health* (7th Cir. 1989), 879 F.2d 286.

The legislature in enacting section 6—305 was clearly concerned with fraud and deceptive practices in the automobile rental industry. The purpose in enacting subsection (f) was to prevent car rental companies from deceiving customers by advertising rates substantially lower than the actual rates charged to the customer, and then adding further unnecessary charges when the customer arrives at the rental counter. Moreover, the purpose in enacting the CDW provision in subsection (f) was to eliminate the abuses associated with those waivers, including the pressure put on customers to purchase often unnecessary waivers sold at excessive costs. The purpose behind enacting the $200 cap in subsection (d) was to prevent rental companies from over charging customers for repairs to cars they have negligently damaged.

We must next consider whether any conceivable facts can support a relationship between the classification and the purpose of the legislation. Subsection (f)'s requirement that all rental charges be

bundled into the quoted and advertised rental rate bears a reasonable relationship to the purpose of avoiding the possible deception arising from an advertised rate which is substantially lower than the actual rate of renting a car. By advertising the bundled rental rate, consumers will be better able to compare the prices offered by rental car companies. The legislature was concerned that customers were drawn to a particular rental car company on the basis of the low advertised rate, only to learn once they arrive at the counter that additional charges were added. Due to the nature of the rental car business, where customers are often business persons in a hurry or vacationers in an unfamiliar city, customers are often unable to assess whether the rental price is fair or whether the additional charges are necessary.

Furthermore, the CDW provision of subsection (f) protects consumers from being coerced or pressured into buying high priced CDWs when their own insurance policies or credit cards provide that same coverage. This legislation is thus rationally related to the purpose of protecting consumers from incurring an excessive cost for something they do not need. Therefore, the legislature rationally determined that bundling and CDW requirements would eliminate deception caused by only advertising the base rate and then adding excessive and unnecessary charges when the customer arrives at the rental counter. Through this legislation, the customers will be better informed on the cost of renting a car.

Also, under the due process analysis, the means of accomplishing this goal of a closer relationship between the advertised rate and the actual cost is also reasonable. The advertised bundled rental rate will be significantly closer to the actual cost imposed at the rental counter if the car rental company is prohibited from adding charges to the advertised rate when the customer arrives at the rental counter.

Furthermore, the $200 cap in subsection (d) is rationally related to the purpose of preventing rental companies from imposing excessive charges on consumers for negligent damage and the cap is a reasonable method to accomplish that objective. The legislature was concerned by instances where rental car companies charge excessive costs to repair a small dent. This provision will certainly prevent rental car companies from charging inflated repair costs for minimal negligent damage to a car.

In its attempt to show that subsections (d) and (f) are not rationally related to the legislation's purpose, Alamo raises several arguments, none of which we find persuasive, particularly in light of the fact that we need only determine whether there is any conceivable basis supporting the legislation. Alamo claims that the bundling

requirement and the CDW limitation in subsection (f) are not rationally related to the legislature's goal of ensuring that advertised rental rates reflect the actual cost of renting a car. Rather, Alamo claims that the bundling and CDW requirements force rental car companies to conceal charges in a daily rental rate. However, nothing in subsection (f) forces rental car companies to conceal the composition of their rental rate from the public. The companies may indeed inform the customer as to how they arrived at the daily rental rate.

Alamo also claims that the challenged legislation does not reduce costs to consumers, but rather increases the cost by requiring car renters to purchase CDWs, which they may not need. The legislature considered the fact that rental car customers are often pressured into purchasing CDWs and that the charge for these CDWs is excessive. The legislature could reasonably have believed that because most car renters purchase CDWs, by including the CDW charge in the bundled advertised charge, the cost of CDWs would be more competitive. In enacting subsections (d) and (f), the legislature balanced the advantages and disadvantages of the legislation. This is a function of the legislature, not the courts. *People v. Kohrig* (1986), 113 Ill. 2d 384, 498 N.E.2d 1158.

Alamo next claims that subsection (d)'s $200 cap is arbitrary and capricious. We agree with the Secretary that lines drawn by the legislature tend to be arbitrary, as lines generally are, but that the government is in the business of drawing them. (*Chicago Observer, Inc. v. City of Chicago* (7th Cir. 1991), 929 F.2d 325.) Thus, we find that the cap is not arbitrary and capricious, but is rationally related to the purpose of ending excessive charges to which it is directed, and is a reasonable means to accomplish that purpose.

Alamo also takes issue with the fact that subsections (d) and (f) address only those engaged in the rental of automobiles and not those engaged in the rental of other chattels. However, there is no evidence that the types of abuses the legislature sought to prevent in enacting subsections (d) and (f) exist with respect to the rental of other chattels. If such problems were shown to exist, the legislature could rationally have chosen to begin addressing the abuses of the rental car industry first. The legislature need not pass a law addressing all of the problems in a field, but may consider degrees of evil and proceed one step at a time. (*People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 173 N.E.2d 485.) The legislature may enact a law that addresses the area of concern that seems most acute. *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 483 N.E.2d 1245.

The same analysis applies to Alamo's claim that subsection (d)

irrationally classifies rental car companies differently from third parties injured by a rental car driver or a third party who damages a rental car. In order to address the abuses in the relationship between car rental companies and their customers, the legislation need not also address the relationship between rental car customers and third parties or rental car companies and third parties.

Alamo points out that section 6—305 does not apply to rental car leases that last over 30 days and argues that there is no rational basis for distinguishing between short and long term leases. We disagree. The legislature could have rationally concluded that long-term car rental customers are more sophisticated consumers and have more time to investigate and compare the prices offered by the various rental car companies and determine what the additional charges are and whether such charges are necessary. Short-term car renters are more likely to be the vacationers in an unfamiliar city or business travelers with little time or opportunity to comparison shop. Even if the same abuses are present in long-term and short-term rentals, the legislature could have properly determined to tackle the abuses connected to short-term leases first. *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 99 L. Ed. 563, 75 S. Ct. 461.

Alamo also argues that subsections (d) and (f) benefit large car rental companies at the expense of small rental companies, since larger companies are better able to absorb the cost of negligent damage than small companies. However, subsection (f) applies to all rental car companies, regardless of size. Alamo has offered no evidence to support its argument that subsection (f) will prevent small companies from competing or that the legislature enacted the subsection in anticipation of any discriminatory impact. *People v. Wegielnik* (1992), 152 Ill. 2d 418, 605 N.E.2d 487.

We find that Alamo has failed to satisfy its burden to show that there is no rational basis for the legislature's enactment of subsections (d) and (f). We therefore conclude that the challenged provisions are constitutional under the equal protection, special legislation and due process clauses.

■ Alamo next claims that subsection (f) unconstitutionally regulates Alamo's commercial speech. The standard the court must use to determine whether subsection (f) violates the first amendment is set forth in *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 475 N.E.2d 536, which adopted the Supreme Court's test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343. Under that test, the court must first determine whether Alamo's speech is protected by the first amend-

ment. The first amendment protects speech which is lawful, truthful and not misleading. If the speech is protected, it must then be determined whether the governmental interest in limiting the speech is substantial. The court must then determine whether the limiting regulation advances that interest and whether the regulation is the least restrictive way to serve the objective.

Alamo's claim does not make it past the first inquiry. The speech affected by the bundling requirement of subsection (f) is misleading and therefore not protected speech. The advertising does not apprise the public of the actual cost of renting a car. Rather, it misleads the public into thinking that the advertised rate, the base rental rate, is the actual cost of the car rental. However, when the customer comes to the rental counter, he or she is charged a significantly higher rate due to additional charges. The State has an interest in protecting the public from misleading advertising which hampers the public's ability to make an informed decision on the selection of a rental car. Therefore, a prohibition on this misleading advertising is not unconstitutional and Alamo's challenge to subsection (f) on first amendment grounds must fail.

■ Alamo next contends that subsection (d), which places a $200 cap on liability for negligent damage to the rented car, is unconstitutional under the jury trial clause in that it invades the province of the jury and precludes car rental companies from having the facts relative to damages negligently caused to their vehicles determined by a jury. Article I, section 13, of the Illinois Constitution provides that, "The right of trial by jury as heretofore enjoyed shall remain inviolate." (Ill. Const. 1970, art. I, § 13.) We agree with the trial court that subsection (d) does not violate the rental car company's right to a jury trial. Before the right to a jury trial is implicated, there must be an issue of fact to be determined. (*Department of Revenue v. Steacy* (1967), 38 Ill. 2d 581, 232 N.E.2d 743.) By precluding any award above the $200 cap, the statute as a matter of law eliminates any factual controversy concerning damages in excess of that amount. In *Boyd v. Bulala* (4th Cir. 1989), 877 F.2d 1191, the plaintiff challenged a Virginia statute imposing a cap on recovery in malpractice actions under the right to a jury trial clause of the seventh amendment of the Federal Constitution. (U.S. Const., amend. VII.) The court held:

> "True, it is the role of the jury as factfinder to determine the extent of a plaintiff's injuries. *** [H]owever, it is not the role of the jury to determine the legal consequences of its factual findings. [Citation.] That is a matter for the legislature, and here, the Virginia legislature has decided that as [a] matter of law damages in excess of [the cap] are not relevant. *** [O]nce the jury has made

its findings of fact with respect to damages, it has fulfilled its constitutional function; it may not also mandate compensation as a matter of law." (877 F.2d at 1196.) The court therefore determined that the statute was constitutional. We reach the same result here.

■ In light of our decision that sections 6—305(d) and (f) are constitutional as a matter of law, the Governor argues, and we agree, that the issue of whether the Governor should be required to turn over certain documents and held in contempt and fined for his refusal to turn over the documents is moot. Questions arising from a trial court's order are moot when, because of developments following the issuance of that order, reversal can have no practical effect on the controversy. *In re Marriage of Holem* (1987), 153 Ill. App. 3d 1095, 506 N.E.2d 739.

On April 4, 1991, the trial court granted plaintiff's motion to compel and directed the Governor to produce the documents at issue on or before April 19, 1991. However, prior to that date, the Secretary and Alamo filed cross-motions for summary judgment. Each side believed that this case could be resolved without any further documents, including those in possession of the Governor. The trial court granted the Secretary's motion for summary judgment and denied Alamo's motion.

In response to the Governor's mootness argument, Alamo contends that because "the underlying controversy has not yet been finally resolved inasmuch as this case continues on appeal" the discoverability of documents issue is not moot. However, because we have now affirmed the trial court order granting summary judgment in the Secretary's favor, the underlying controversy has been finally resolved and there is no longer any basis for enforcement of the production order against the Governor. Our decision to uphold the constitutionality of the statute renders any ruling on the discovery order meaningless. We therefore vacate the trial court order which required the Governor to produce certain documents, imposed a fine and held the Governor in contempt.

Affirmed in part and vacated in part.

COUSINS, J., concurs.

PRESIDING JUSTICE MURRAY, dissenting:
I disagree with the majority's excellent opinion on the issue of the statute's constitutionality on a point not adequately addressed by the majority or Secretary of State.

The statute only applies to private "passenger" motor vehicles leased to another in "rental agreements of 30 continuous days or less" (625 ILCS 5/6—305(d) (West 1992)).

A vast number of motor vehicles are leased for less than 30 continuous days, *i.e.*, "trucks." Also a greater number of passenger vehicles are rented for over 30 continuous days. The above act does not apply to either of them.

Article IV, section 13, of our Illinois Constitution precludes our General Assembly from passing a "special or local" law when a general law is or can be made applicable. Whether such law can be made applicable is a matter for judicial determination. This means that in a particular case it must appear that there is a classification based upon a rational difference of situation or condition. (*In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 489 N.E.2d 1385.) Nothing in the record or briefs shows any reason why the same person or persons who rent a passenger car for more than 30 continuous days or a truck for less than 30 continuous days should be treated differently than the same person or persons who rent a passenger car for less than 30 continuous days or less.

Until a reasonable basis is shown for such a difference in classifications, I don't see how an appellate court can make the determination required by the constitution as to whether the law is a local one prohibited by the constitution or a constitutional one. I would remand the case to the trial court to give the parties an opportunity to show some basis or lack of basis why the same person who rents a truck, not a passenger vehicle, for less than 30 continuous days or a passenger vehicle for more than 30 continuous days is not subject to the act.