SKYLINE INTERNATIONAL DEVELOPMENT, Plaintiff-Appellee, v. CITIBANK, F.S.B., Incorrectly Sued as Citibank, N.A., Defendant-Appellant.

First District (2nd Division)   No. 1—97—4074

Opinion filed December 15, 1998.

Todd A. Rowden and David B. Altman, both of Wilson & McIlvaine, of Chicago, for appellant.

Richard H. Ferri, of Kelly, Olson, Michod & Siepker, and Michael G. Swiatek, both of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Defendant, Citibank, F.S.B., appeals from a trial court order granting summary judgment in favor of plaintiff, Skyline International Development, on Skyline's claims of unauthorized wire transfer, promissory estoppel, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)) against Citibank. We reverse in part, vacate in part, affirm in part and remand in part.

On August 19, 1996, Eric Chang, a principal of Skyline, visited Citibank Branch No. 5, located in Chicago, Illinois, and requested that a wire transfer in the amount of $16,000 be sent to the Beijing Peace Hotel, at its account with the Bank of China. Chang made this request to Wade Meitz, a Citibank employee who prepared a wire transfer order. It was shortly before 2 p.m. central standard time, the daily cutoff for executing payment orders in time for them to be placed into the interbank network and completed that same day. Meitz entered the information given to him by Chang into Citibank's computer system.

Due to a printer problem, Meitz printed out the wire transfer information at the desk of Laura Solis, a coworker. Meitz signed the computer printout, also known as a fund transfer form. Solis then signed the sheet, approved the transfer, and entered the necessary keystrokes into her computer terminal to send Skyline's wire into Citibank's online network for wire transfers. Skyline's payment order was immediately executed and placed into the interbank wire transfer network and sent to the Bank of China.

After the wire transfer was sent, Meitz asked Chang to sign the fund transfer form. The information on the form called for Citibank to wire $16,000 from Skyline's account to the Bank of China's Beijing Branch for the account of the Beijing Peace Hotel. Chang did not sign the form. Instead, Chang made a call on his cellular phone to confirm the information for the wire transfer, then told Meitz that he made a mistake and needed to change the beneficiary of the wire transfer. Chang said that the wire transfer should be sent to the account of Jun Liu, not the Beijing Peace Hotel, as he was originally told by one of Skyline's secretaries. Meitz told Chang that the wire transfer had already been executed by Citibank, but he would cancel or recall the wire. Chang then instructed Meitz to wire $16,000 to the account of Jun Liu. Chang signed the fund transfer form authorizing that wire. Meitz completed a wire transfer recall form for the first wire and faxed it to Citibank's central wire transfer processing facility.

Over one month later, Patti Anderson, Citibank's vice president and branch manager, notified Skyline that its account was being debited for an August 16, 1996, wire transfer of $16,000 to the Beijing Peace Hotel. Citibank notified Skyline that despite its attempts to recall the funds, the Bank of China and the Beijing Peace Hotel refused to return the funds.

Skyline brought suit against Citibank claiming unauthorized wire transfer, promissory estoppel, fraud/deceptive practices, negligent misrepresentation and negligence. The trial court granted summary judgment in favor of Skyline on Skyline's claims of unauthorized wire transfer, promissory estoppel, and consumer fraud. It also granted damages in favor of Skyline and against Citibank in the amount of $32,924.13 to reimburse Skyline $16,000 for the wrongful debit of its account and $16,924.13 in attorney fees, costs and expenses incurred by Skyline in bringing this action. Citibank appeals, claiming that the trial court improperly entered summary judgment on these counts and improperly computed damages.

■ In reviewing a summary judgment order, the appellate court determines whether there is a genuine issue of material fact under a *de novo* standard of review after considering the pleadings, deposi-

tions, admissions, exhibits and affidavits. *Steel Co. v. Morgan Marshall Industries, Inc.*, 278 Ill. App. 3d 241, 662 N.E.2d 595 (1996).

■ Citibank first claims that the trial court erred in concluding that Skyline was entitled to summary judgment on its claim of unauthorized wire transfer. The issue of whether a wire transfer is authorized is governed by section 4A—202 of the Uniform Commercial Code—Funds Transfers (UCC) (810 ILCS 5/4A—202 (West 1994)). Section 4A—202 provides:

> "Authorized and verified payment orders. (a) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.
>
> (b) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer." 810 ILCS 5/4A—202 (West 1994).

Section 4A—202(a) refers to identity authorization, such as whether the person giving the instructions had authority to act on behalf of the sender. There is no dispute here that Chang, the person giving the instructions to Citibank, was a properly authorized agent of Skyline. Thus, identity authorization as required by section 4A—202(a) was clearly present here.

■ Moreover, Skyline cannot show that the wire transfer to the Beijing Peace Hotel was made in violation of a security procedure as set forth in section 4A—202(b). The term "security procedure" is defined in section 4A—201 of the UCC as

> "a procedure established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or canceling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication. *** Comparison of a signature on a payment order or communication with an authorized specimen signature of the customer is not by itself a security procedure." 810 ILCS 5/4A—201(West 1994).

The official comment to section 4A—201 states that "[t]he definition of security procedure limits the term to a procedure 'established by agreement of a customer and a receiving bank.' The term does not ap-

ply to procedures that the receiving bank may follow unilaterally in processing payment orders." 810 ILCS Ann. 5/4A—201, Uniform Commercial Code Comment, at 449 (Smith-Hurd 1993).

■ Citibank concedes that it had an internal procedure for obtaining authorization for wire transfers and that procedure was not followed in this case. However, the violation of this internal procedure was not a violation of a security procedure since Citibank and Skyline had not agreed that the authorization of wire transfers would be verified pursuant to Citibank's security procedures. We therefore find that Skyline is unable to show that the first wire transfer to the Beijing Peace Hotel was unauthorized. Summary judgment was thus improperly entered in Skyline's favor on this count.

■ Citibank next claims that the trial court improperly granted summary judgment on Skyline's promissory estoppel count. To prevail on a claim of promissory estoppel, the claimant must prove that: (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such a promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied on the promise to its detriment. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 565 N.E.2d 990 (1990).

■ We find that Skyline has presented ample evidence to satisfy its promissory estoppel claim as a matter of law. Chang informed Meitz that he had mistakenly instructed Meitz to wire funds to the Beijing Peace Hotel's account. Meitz testified that he then told Chang that the wire had already been sent but that he would "cancel the existing wire." Meitz testified that he intended his comments to convey that the wire could be recalled. Moreover, in response to Skyline's request to admit, Citibank admitted that Meitz told Chang that the wire transfer to the Beijing Peace Hotel was either "retrievable, or had been canceled." Chang stated in his affidavit that he relied on Meitz's assurance that the first wire transfer would be canceled in authorizing Citibank to send the second wire to Jun Liu, the correct person.

Based on this evidence, we find that Meitz reasonably could have expected and foreseen that Chang would rely on his statements regarding canceling the first wire transfer, in authorizing the second payment order to wire $16,000 to the Bank of China for the account of Jun Liu. As a result, Citibank's debit to Skyline's account for both $16,000 wires caused detriment and damage to Skyline. Summary judgment was therefore properly entered in favor of Skyline on its promissory estoppel count.

■ Citibank next claims that the trial court erred in finding that Skyline was entitled to summary judgment on its claim of fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act

(Act) (815 ILCS 505/1 *et seq.* (West 1996)). Citibank claims that summary judgment was improperly granted on this count since there was no showing of consumer impact. The Act states:

> "(e) The term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e) (West 1994).

Under the Act, a "person" is defined as "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association." 815 ILCS 505/1(c) (West 1996). Citibank appears to be arguing that because Skyline is a corporation, it is not a consumer and, therefore, had to show public injury or injury to consumers generally. See *Empire Home Services, Inc. v. Carpet America, Inc.*, 274 Ill. App. 3d 666, 653 N.E.2d 852 (1995) (when a dispute under the Act involves two businesses that are not consumers of each other's products, the relevant inquiry is whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns). However, as long as the plaintiff, whether a business entity or a person, is a consumer, it need only show a personal injury caused by the fraudulent or deceptive acts. *W.E. O'Neil Construction Co. v. National Union Fire Insurance Co.*, 721 F. Supp. 984, (N.D. Ill. 1989). We find that Skyline was a consumer under the definition provided by the Act. Plaintiff, though a corporation, was a consumer of defendant's banking services when it requested the wire transfer.

■ Nonetheless, we find the Act inapplicable here. The Act is not applicable to every wrong caused to a consumer. See *Bankier v. First Federal Savings & Loan Ass'n*, 225 Ill. App. 3d 864, 588 N.E.2d 391 (1992). The Act was intended to protect consumers against fraud, unfair or deceptive acts or practices in the conduct of trade or commerce. *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 643 N.E.2d 199 (1994); *Elson v. State Farm Fire & Casualty Co.*, 295 Ill. App. 3d 1, 691 N.E.2d 807 (1988). We do not believe it was intended to apply an isolated misstatement like the one at issue here. When Meitz informed Chang that the wire could be cancelled, Meitz believed this was an accurate statement. Meitz later learned that once the wire transfer had been sent, it could not simply be cancelled upon his request. This is not the type of misstatement that raises the consumer protection concerns the Act was intended to address. Therefore, we reverse the trial court order entering summary judgment in favor of Skyline on this count. In light of our decision to reverse Skyline's consumer fraud count, the award of attorney fees thereunder is also vacated.

■ Citibank next claims that the trial court improperly computed damages. Although we have found that summary judgment was properly granted in Skyline's favor on its promissory estoppel count, we believe an issue of fact remains as to whether Skyline is entitled to recover the entire $16,000 Citibank debited to Skyline's account for the first wire transfer to Beijing Peace Hotel.

Citibank claims that Skyline owed the Beijing Peace Hotel a *bona fide* debt, and thus it suffered no loss and would be unjustly enriched if Citibank were required to credit Skyline's account for the amount of $16,000. Citibank relies on *Gatoil (U.S.A.), Inc. v. Forest Hill State Bank*, 1 U.C.C. Rep. Serv. 2d 171 (D. Md. 1986), and *Banque Worms v. BankAmerica International*, 77 N.Y.2d 362, 570 N.E.2d 189, 568 N.Y.S.2d 541 (1991), which provide that money wire transferred by mistake cannot be recovered if the beneficiary of the wire transfer applied the payment in good faith to a valid debt.

To establish Skyline's debt to the Beijing Peace Hotel, Citibank relies on a letter from the hotel dated July 26, 1996, almost one month prior to the wire transactions at issue here, claiming that it is owed $13,834 in rent from Skyline. Skyline claims that this letter is inadmissible hearsay. Citibank, in turn, argues that the letter is admissible since it is an invoice kept by Skyline in its ordinary records and in the course of business. Citibank also relies on Skyline's interrogatory answer stating that "Chang desired to advance Jun Liu funds to pay certain expenses of plaintiff including rents due to the Beijing Peace Hotel Co. attributable to that portion of Jun Liu's office which was dedicated to plaintiff."

Skyline responds that the UCC controls the damages issue here and that *Banque Worms* is inapplicable. Skyline also argues that, while it intended it reimburse Jun Liu for rent relating to that portion of Jun Liu's office that was used for Skyline's business, Skyline wound up paying both Jun Liu and the Beijing Peace Hotel for this expense.

The issue of damages was not fully addressed by the trial court, and the trial court never considered whether Skyline owed a debt to the Beijing Peace Hotel and, if so, whether such a debt may be set off by Citibank against Skyline's claim for credit to its account in the full amount of the first wire transfer to the Beijing Peace Hotel. We therefore remand for a resolution of this issue by the trial court after an evidentiary hearing.

Accordingly, for the reasons set forth above, we reverse the trial court orders granting summary judgment in favor of Skyline on the unauthorized wire transfer and consumer fraud counts and enter judgment in favor of Citibank on these counts. We also affirm the trial court order granting summary judgment in favor of Skyline on its

promissory estoppel count and remand for an evidentiary hearing on the issue of damages.

Reversed in part, vacated in part, affirmed in part, and remanded in part.

GORDON, P.J., and COUSINS, J., concur.