THIRD DIVISION

                                     Filing Date: June 28, 2002

No. 1-01-3131

CHARLES ALLEN and EUGENIA MELKO,      ) Appeal from the 

                                      ) Circuit Court of

        Plaintiffs-Appellees,         ) Cook County.

                                      )

        v.                            ) No. 98 CH 16228

                                      )

WOODFIELD CHEVROLET, INC. and         )

WIDERMYRE ASSOCIATES,                 ) Honorable 

                                      ) Dorothy Kirie Kinnaird,

        Defendants-Appellees.         ) Judge Presiding.        

     PRESIDING JUSTICE HALL delivered the opinion of the court: 

     The plaintiffs, Charles Allen and Eugenia Melko, filed a four-count complaint against the defendants, Woodfield Chevrolet (Woodfield) and Widermyre Associates (Widermyre), seeking damages in connection with the purchase of a vehicle by the plaintiffs from Woodfield.  Counts I and II of the complaint solely concerned Woodfield.  Counts III and IV solely concerned Widermyre.  

     Count II of the complaint sought a declaratory judgment that certain provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act (the Act) (815 ILCS 505/1 
et
 
seq.
 (West 1996)) are unconstitutional. 

     The plaintiffs filed a motion for judgment on the pleadings as to count II of their complaint.  The circuit court denied the motion, and subsequently, entered judgment for Woodfield on count II.   Following the dismissals of counts I, III and IV, the plaintiffs filed a timely notice of appeal.  

     This appeal concerns only count II of the complaint and only defendant Woodfield.

     The sole issue raised on appeal is whether the 1993 and 1996 amendments to the Act are unconstitutional as either special legislation or as violative of equal protection
.

 FACTUAL BACKGROUND

     The following facts are taken from the plaintiffs' complaint.  

     On or about April 2, 1996, the plaintiffs purchased a 1993 Nissan Pickup 4 by 4 vehicle from Woodfield for $15,495.  Because of a problem with the vehicle, they returned it to Woodfield a few days later.  While there, they noticed an advertisement for a 1993 Nissan Pickup 4 by 4 for $10,900.  When they inquired as to

the difference in price between the vehicle they had purchased and the advertised vehicle, they were told that, while it was the same make and model as the one they had purchased, it was a different vehicle and had a different stock number. 

     After determining from the odometer disclosure statement that the vehicle they had purchased had the same stock number as the vehicle advertised, they returned to Woodfield and demanded a reduction in price for the vehicle they had purchased.  They were told that it was not possible to obtain a reduction in the price.

     The plaintiffs filed a four-count complaint against Woodfield and Widermyre Associates, who, on behalf of Woodfield, had attempted to collect the debt owed by the plaintiffs on the vehicle they purchased.    

     Count II of the complaint alleges that subsections (f), (g) and (h) of section 10a of the Act (815 ILCS 505/10a(f), (g), (h) (West 1996)), violates the 1970 Illinois Constitution's prohibition against special legislation and violates the equal protection provisions of the 1970 Illinois Constitution and United States Constitution.  The plaintiffs acknowledged that Allen did not comply with the pre-suit notification required by section 10a(h) of the Act.

      The plaintiffs filed a motion for judgment on the pleadings solely as to count II of the complaint.  In their memorandum of law, they also raised the unconstitutionality of section 10a(a) of the Act as special legislation and violative of equal protection.  In their memorandum of law, the plaintiffs argued that the above amendments are special legislation in that they benefit only dealers of new and used vehicles and are not based on any real or substantial differences between that group and others who are alleged to have committed consumer fraud under the Act.   They also argued that the above amendments violate equal protection in that there is no rational difference between a

consumer bringing a fraud action under the Act against a car dealer and any other dealers of goods who are not car dealers. 

     Woodfield filed a response to the plaintiffs' motion for judgment on the pleadings.  Woodfield argued that, under the rational basis test applicable to both equal protection and special legislation challenges to statutory enactments, the amendments were necessary to correct the practice of utilizing the Act to discourage resolution of disputes and to generate attorney fees, which were burdening the automobile industry.

     The circuit court denied the plaintiffs' motion for judgment on the pleadings.  Subsequently, the circuit court entered judgment for Woodfield on count II and granted the plaintiffs' motion to voluntarily dismiss counts III and IV against Widermyre.  On July 26, 2001, the circuit court dismissed count I of the complaint on the basis that the plaintiffs did not provide pre-suit notice as required by the Act.  See 815 ILCS 505/10a(h) (West 1996).  This timely appeal followed.

ANALYSIS

I.  Legislative Background

     
In 1993, the Illinois legislature amended section 10a of the Act by adding the following subsections:

     "(f) At any time more than 30 days before the commencement of trial, a party, who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code and who is defending a claim under this Act, may serve upon the party seeking relief under this Act an offer to allow judgment to be taken against the defending party to the effect specified in the offer with costs then accrued.  If within 10 days after service of the offer, the offeree serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service of the notice; the court shall then enter judgment.  An offer not accepted shall be deemed withdrawn and evidence of the offer is not admissible except in a proceeding to determine costs.  When a party seeking relief under this Act does not accept an offer filed with the clerk and served upon the attorney for that party more than 30 days before the commencement of trial and when that party fails to obtain a judgment in an amount more than the total offer of settlement, that party shall forfeit and the court may not award any compensation for attorney's fees and costs incurred after the date of the offer.

      (g) At any time more than 30 days before the commencement of trial, a party who is seeking relief under this Act from a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code may serve the dealer an offer to allow judgment to be taken against the dealer to the effect specified in the offer with costs then accrued.  If within 10 days after service of the offer, the offeree serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service of the notice; the court shall then enter judgment.  An offer not accepted shall be deemed withdrawn and evidence of the offer is not admissible except in a proceeding to determine costs.  When a dealer does not accept an offer filed with the clerk and served upon the attorney for the dealer more than 30 days before the commencement of trial and if the party seeking relief against a dealer obtains a judgment in an amount equal to or in excess of the offer amount, the party seeking relief shall be paid interest on the offer amount at the rate as provided in Section 2-1303 of the Code of Civil Procedure from the date of the offer until the judgment is paid."  Pub. Act 87-1140, eff. Jan. 1, 1993 (amending 815 ILCS 505/10a (West 1994)).

     Subsequently, in 1996, the legislature amended section 10a (a) and added subsection (h) as follows:

     "10a.  Action for actual damages.

     (a) Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person.  The court, in its discretion may award actual economic damages or any other relief which the court deems proper; provided, however, that no award of punitive damages may be assessed under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code, unless the conduct engaged in was willful or intentional and done with evil motive or reckless indifference to the rights of others.  Proof of a public injury, a pattern, or an effect on consumers and the public interest shall be required in order to state a cause of action under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code.  Proof of such public injury may be shown by any one of the following factors:   

     (1) Violation of a statute that has a public interest impact.

     (2) Repeated acts prior to the act involving the plaintiff.

      (3) Potential for repetition.

***

      (h) At least 30 days prior to the filing of an action under this Section, a party who is seeking relief shall serve a written notice of the nature of the alleged violation and demand for relief upon the prospective party, who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code, against whom such action will be commenced.  Any person receiving such a demand for relief may, within 30 days of service of the demand for relief, submit a written offer of settlement, which offer is to be exclusive of attorney's fees, to the party serving the notice and demand.  The party who is seeking relief must certify in any cause of action that the notice and demand was served upon the named defendants and the substance of their response, if any.  If the offer of settlement is rejected in writing by the party who is seeking relief, then, in any subsequent action, the court shall deny any award of attorney's fees and costs requested by the party seeking relief under this Act incurred after the rejection of the written offer of settlement, if the judgment is less than the amount contained within the offer of settlement.  All written offers of settlement under this subsection shall be presumed to be offered without prejudice in compromise of a disputed matter." Pub. Act 89-144, eff. January 1, 1996) (amending 815 ILCS 505/10a(a) (West 1996)).  

II. Standard of Review

     
The constitutionality of a statute is a question of law subject to 
de
 
novo
 review.  
Miller v. Rosenberg
, 196 Ill. 2d 50, 57, 749 N.E.2d 946, 951 (2001)

III.  Constitutional Issues

     A.  Analysis Applicable to Constitutional Questions

     Courts should begin any constitutional analysis with the presumption that the challenged legislation is constitutional and that it is the plaintiff's burden to clearly establish that the challenged provisions are unconstitutional.  
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 689 N.E.2d 1057, 1063 (1997).  The legislature has broad discretion to determine not only what the public interest and welfare require but to determine the measures needed to secure such interest.  
Chicago National League Ball Club, Inc. v. Thompson
, 108 Ill. 2d 357, 364, 483 N.E.2d 1245, 1248 (1985).  Whether the course chosen by the legislature "'is wise or whether it is the best means to achieve the desired result is not a proper subject of judicial inquiry.' [Citation.]" 
Fireside Chrysler-Plymouth Mazda, Inc. v. Edgar
, 102 Ill. 2d 1, 7, 464 N.E.2d 275, 278 (1984).  The legislative history of an enactment may be considered if the resolution of an issue so requires.  
Best
, 179 Ill. 2d at 382, 689 N.E.2d at 1065.

B. Special Legislation 

     The special legislation clause of the 1970 Illinois Constitution provides:

     "'The General Assembly shall pass no special or local law when a general law is or can be made applicable.  Whether a general law is or can be made applicable shall be a matter for 
judicial
 determination.' (Emphasis added.)" 
Best
, 179 Ill. 2d at 390-91, 689 N.E.2d at 1069; Ill. Const. 1970, art. IV, §13.

     The special legislation clause prohibits legislation which arbitrarily discriminates in favor of a select group.  
Bilyk v. Chicago Transit Authority
, 125 Ill. 2d 230, 236, 531 N.E.2d 1, 3 (1988).  This constitutional provision supplements the equal protection guarantee, which prohibits arbitrary and invidious discrimination against a person or a class.  
Bilyk
, 125 Ill. 2d at 236, 531 N.E.2d at 3.  A special legislation challenge generally is judged under the same standards applicable to an equal protection challenge.  
Best
, 179 Ill. 2d at 393, 689 N.E.2d at 1070-71.  Where, as in this case, the legislation in question does not affect a fundamental right or involve a suspect or quasi-suspect classification, the appropriate standard of review is the rational basis test.  
Best
, 179 Ill. 2d at 393, 689 N.E.2d at 1071.  Under this standard, the court must determine whether the statutory classification is rationally related to a legitimate State interest.  
Best
, 179 Ill. 2d at 393, 689 N.E.2d at 1071.  

     Our supreme court has noted the difficulty in determining whether a statutory enactment violates the special legislation clause and has described the dilemma as follows:

     "'It is impossible to conceive of a law that has universal impact and affects everyone or everything in the same way.  By enacting laws, the legislature can hardly avoid excluding some category of people or objects.  In enforcing this prohibition, the courts must decide if the legislature has made a reasonable classification.  Differences of opinion are bound to exist in such situations and the ultimate decision must rest with some judgment as to the soundness of the legislature's action.' [Citation.]" 
Best
, 179 Ill. 2d at 394, 689 N.E.2d at 1071.

     A legislative decision is not subject to courtroom factfinding and may be based on rational speculation unsupported by admissible evidence or empirical data.  
Alamo Rent A Car, Inc. v. Ryan
, 268 Ill. App. 3d 268, 272, 643 N.E.2d 1345, 1349 (1994).  Under the rational basis test, the court may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate the legislative action.  
Alamo Rent A Car, Inc.
, 268 Ill. App. 3d at 272-73, 643 N.E.2d at 1349.  Because the court may on its own initiative articulate the facts necessary to justify the legislation, the question of whether the legislation is constitutional is a question of law for the court to determine.  
Alamo Rent A Car, Inc.
, 268 Ill. App. 3d at 273, 643 N.E.2d at 1349.  If there is any conceivable basis for finding a rational relationship, the law will be upheld.  
Alamo Rent A Car, Inc.
, 268 Ill. App. 3d at 273, 643 N.E.2d at 1349-50.  It is the burden of the person attacking the legislation to negate every conceivable basis which supports it.  
Alamo Rent A Car, Inc.
, 268 Ill. App. 3d at 273, 643 N.E.2d at 1350.  Under the rational basis test, the existence of a less onerous or more equitable alternative means of securing a governmental interest is not by itself sufficient to render an ordinance unconstitutional.  
Hunt v. Daley
, 286 Ill. App. 3d 766, 774, 677 N.E.2d 456, 462 (1997).

     Our supreme court has invalidated legislative classifications under the special legislation clause where they have an artificially narrow focus and which appear to be designed primarily to confer a special benefit on a particular private group without a rational basis, rather than to promote the general welfare.  See 
Best
, 179 Ill. 2d at 395-96, 689 N.E.2d at 1071 (cases cited therein).  The hallmark of an unconstitutional classification is its arbitrary application to similarly situated individuals without adequate justification or connection to the purpose of the statute.  
Best
, 179 Ill. 2d at 396, 689 N.E.2d at 1072.

     The purpose of the Act in this case is to protect consumers against fraud, unfair or deceptive acts or practices in the conduct of trade or commerce.   
Skyline International Development v. Citibank, F.S.B.
, 302 Ill. App. 3d 79, 85, 706 N.E.2d 942, 946 (1998).  The question then is whether there is adequate justification or connection to purpose of the Act for making the amendments in this case applicable only to new and used car dealers.  Even so, the court is not confined to the purpose articulated in the Act but may find any plausible purpose supporting the legislation.  
Alamo Rent A Car
, 268 Ill. App. 3d at 273, 643 N.E.2d at 1350.  

     According to the legislative history, the 1993 amendments to the Act, which imposed penalties on both consumers and dealers for refusing to settle cases, were designed to encourage reasonable settlements of disputes.  87 Ill. Gen. Assem., Senate Proceedings, June 19, 1992, at 16 (statements of Senator Weaver).  The 1996 amendments to the Act changed "actual damages" to "actual economic damages," limited the ability of the consumer to receive punitive damages and added a notice requirement prior to bringing suit.  The need to modify the allowance of punitive damages was explained as follows:

     "There have been a variety of cases filed under the Consumer Fraud Act that have rendered excessive awards in the area of punitive damages and attorney's fees.  I mean it's the belief by many that the courts do not have a clear [
sic
] 
or through they're [
sic
] interpretations there's confusion as to what the true cause of action would be ... how the cause of action should be outlined in filing a case.  So it's an attempt to clean up some confusion within the judicial area and also to outline the burden of proof in order to award ... receive actual damages and punitive damages."  89th Gen. Assem., House Proceedings, May 22, 1995, at 269 (statements of Representative Cross).  

According to Representative Cross, section 10a of the Act has been abused as exemplified by situations in which simple mistakes by car dealers have garnered as much as $20,000 in punitive damages.  89th Gen. Assem., House Proceedings, May 22, 1995, at 271 (statements of Representative Cross).  

     The need for the pre-suit notice requirement was explained as follows:

"Senator Cronin:  What we're attempting to address is a problem that, as I said, came to my attention, whereby an aggressive group of plaintiffs' attorneys would churn cases seeking - - and their - - their intent is questionable.  The Car Dealers felt that the - - the goal was to  - - to seize attorneys' fees, and there wasn't a good-faith basis for the claim.  And so claims that would be minimal in nature, there was never a good-faith effort to negotiate or to try to work out problems.  The lawyers would persist and ring up fees, and as you know, those fees are guaranteed under the Consumer Fraud Act.  

***

We just wanted to give the parties - - it's a kind of almost like mandatory arbitration.  Give them an opportunity to sit down and maybe work it out before it goes into the court system."  89th Gen Assem., Senate Proceedings, April 26, 1995, at 30, 32 (statements of Senator Cronin).  

     According to Representative Cross, some 250 lawsuits have been filed under section 10a of the Act; however, these were not necessarily all frivolous.  89th Gen. Assem., House Proceedings, May 22, 1995, at 270 (statements of Representative Cross).  

     Finally, when a question was raised as to why these amendments were not made applicable to other persons who defraud consumers under the Act, Representative Cross responded as follows:

     "Well, Representative [Currie], this was language that was agreed upon by ... as I said earlier, the trial lawyers and the Attorney General's Office.  In talking with them, it was an attempt to compromise, it was an attempt to work out an agreement.  As I just said earlier, they are neutral on the Bill.  This seems to be one area where there has been an abuse of this statute prior to this proposed Amendment.  That's the reason for limiting it to that.  If you want to broaden the people or the entities or the agencies that have been listed, that we've listed here, I'll be glad to work with you on that.  If you want to include yacht dealers that's fine, if you want to include refrigerator dealers that's fine, if you want to include air conditioner dealers that's fine, motorcycle dealers.  I'd be more than happy to talk to you about it."  89th Gen. Assem., House Proceedings, May 22, 1995, at 290-91 (statements of Representative Cross).  

     In the present case, this court must determine if the classification created by the 1993 and 1996 amendments to the Act is based upon reasonable differences in kind or situation and whether the basis for the classification is sufficiently related to the evil to be obviated by the statute.  
Best
, 179 Ill. 2d at 394, 689 N.E.2d at 1071.  While the legislature has wide discretion in the exercise of its police powers, in evaluating a challenged provision, the court must consider the natural and reasonable effect of the legislation on the rights affected by the provision.  
Best
, 179 Ill. 2d at 394, 689 N.E.2d at 1071.  

     The amendments in this case were urged because the legislature perceived that in cases involving new and used car dealers, as opposed to other persons or entities subject to the Act, the availability of punitive damages and awards of attorney fees encouraged consumers to file lawsuits rather than attempting to work out a settlement in lieu of going to court.  The "legitimate State interest" as reflected in the legislative history is to encourage settlement of consumer fraud cases involving new and used car dealers and to discourage the filing of lawsuits in these cases which are brought only to generate attorney fees and/or achieve a windfall by means of a large punitive damages award.  

     In this case, by enacting the 1993 and 1996 amendments, the legislature sought to provide a statutory scheme whereby the automobile dealers and consumers must evaluate the worth of their respective cases before filing suit or rejecting a settlement offer, or risk either the loss of an award of attorney fees which would otherwise be available to them under the Act or the imposition of interest on the judgment amount.  Further, the legislature sought to restrict awards of punitive damages in those cases by requiring the consumer to meet a higher standard of proof than required in other cases under the Act.  Finally, failure to comply with the mandatory pre-suit notification requirement would result in the dismissal of the consumer's cause of action under the Act. 

      Assuming that the State has a legitimate interest in the settling of disputes and in discouraging lawsuits brought merely to generate attorney fees, there is nothing more unique about a fraud case brought against a car dealer than one brought against any other person or entity subject to the Act.  Moreover, the effect of the legislation in this case is to penalize the consumer and not the attorneys who, according to the legislative history, are the ones the legislators deemed responsible for filing lawsuits merely to generate fees for themselves.

     "'[O]ne of the purposes of allowing attorney fees to be awarded under section 10a(c) [of the Consumer Fraud Act] to prevailing parties is to encourage consumers to bring actions to vindicate their rights under the Act. [Citation.]  Without such a provision, it would be difficult for injured consumers to obtain counsel in light of the sums of money that are in dispute in most consumer fraud litigation.' [Citation.]"  
Majcher v. Laurel Motors, Inc.
, 287 Ill. App. 3d 719, 733, 680 N.E.2d 416, 426 (1997).  Thus, a consumer would be discouraged from pursuing an action for fraud against an automobile dealer for fear that he or she risks the loss of an award of attorney fees and therefore must pay the attorney out of his or her own pocket.  It also discourages attorneys from representing consumers who can not otherwise afford an attorney, and therefore, deprives consumers of legal representation.   

     With regard to the limitations imposed on awards of punitive damages, the new standards create an increased burden on consumers not required of consumers defrauded by non-car dealers and are not sufficiently related to the evil to be obviated by the statute.  Increasing the burden of proving punitive damages would not decrease the filing of suits to generate attorney fees, since attorney fees may be awarded in the absence of a punitive damage award.  

     Woodfield maintains that the applicability of the amendments in this case solely to new and used car dealers is not an arbitrary classification.  It argues that the legislature has enacted and our supreme court has upheld laws pertaining solely to automobile dealers, and therefore, it is apparent that the buying and selling of automobiles is considered unique and distinct from the activities of other persons or entities subject to the Act.  See 
Fireside Chrysler-Plymouth Mazda, Inc.
, 102 Ill. 2d 1, 464 N.E.2d 275 (Sunday closing statute pertaining only to new and used car dealers upheld as part of the regulatory scheme by which the legislature demonstrated that it wished to regulate certain aspects of the selling of automobiles in a manner different from other retail enterprises).

     Woodfield further argues that classifications based upon activities rather than status are given deference.  See 
Fujimura v. Chicago Transit Authority
, 67 Ill. 2d 506, 368 N.E.2d 105 (1977) (notice and filing requirements applicable only to the CTA upheld based upon the CTA's unique governmental function and the higher duty of care standard applicable to it than to other local government units).  

     Both cases are distinguishable.  Unlike the Sunday closing statute in 
Fireside Chrysler-Plymouth Mazda, Inc.
, section 10a is not part of the regulatory scheme for the selling of automobiles.  Instead, it is a statute designed to aid consumers who have been defrauded, and not only by automobile dealers.  Moreover, unlike the CTA in 
Fujimura
, the disputes between new and used car dealers and their customers are not so unique from other disputes under the Act as to justify a classification apart from that of other persons or entities subject to the Act.

     Finally, Woodfield argues that the amendments to section 10a were enacted because the legislators recognized that new and used car dealers were the victims of abuses not experienced by others subject to the Act.  

     
In 
Grace v. Howlett
, 51 Ill. 2d 478, 283 N.E. 2d 474 (1972), the plaintiffs challenged amendments to the Insurance Code which limited a party's ability to collect damages depending upon whether the party at fault was using a vehicle for commercial or private usage.  
In support of the legislation, the defendants argued that the legislation was in response to the growing public demand for a change in the way society copes with the enormous legal, social and economic problems produced by car accidents.  The defendants identified small personal injury actions as one of the major defects of the system of compensating car accident victims.  
Grace
, 51 Ill. 2d at 484, 282 N.E. 2d at 477.  

     In determining whether the challenged provisions violated the special legislation prohibition and equal protection, the court stated:

     "We assume that the problems described by the defendant[s] do exist.  But as has been pointed out, the fact that a problem 'does exist does not permit arbitrary or unrelated means of meeting it to be adopted.' [Citation.]"  
Grace
, 51 Ill. 2d at 485, 282 N. E. 2d at 478.

The court noted that there were many purposes for which the obvious differences between private passenger vehicles and commercial vehicles would justify different legislative treatment.  However, the determination of the amount to be recovered by a person injured by those vehicles and the conditions governing that recovery were not among those purposes.  
Grace
, 51 Ill. 2d at 487, 282 N.E. 2d at 479.   

    In addition, while acknowledging that the equal protection guarantee and the special legislation clauses cover much the same ground, the 
Grace
 court noted that they are not duplicates, and that, in the case of a special legislation challenge, the court has an additional responsibility to determine whether a general law "'is or can be made applicable.'" 
Grace
, 51 Ill. 2d at 487, 282 N.E. 2d at 479.  The court stated:

     "Unless this court is to abdicate its constitutional responsibility to determine whether a general law can be made applicable, the available scope for legislative experimentation with special legislation is limited, and this court cannot rule that the legislature is free to enact special legislation simply because 'reform may take one step at a time.' [Citation.]" 
Grace
, 51 Ill. 2d at 487, 282 N.E. 2d at 479.

But see 
Alamo Rent A Car
, 268 Ill. App. 3d at 275, 643 N.E. 2d at 1351 (legislature need not pass a law addressing all of the problems in a field, but may consider degrees of problems and proceed one step at a time).

     The Act makes awards of attorney fees and punitive damages available to all consumers who have a cause of action under the Act and does not require any pre-suit notice in any other case.    We note that no hearing was held on the 1993 amendments.   See 89th Gen. Assem., Senate Proceedings, June 19, 1992, at 20 (statement of Senator Del Valle).  There is also no indication that the 1996 amendment received a hearing.  The claim that 250 lawsuits involving car dealers have been filed under the Act is an empty statistic without any evidence as to how many of these suits against car dealers were in fact frivolous or how many lawsuits were filed against other retailers alleging violations of the Act.  Compare 
Miller
, 196 Ill. 2d 50, 749 N.E.2d 946 (legislation eliminating the need to prove special damages in malicious prosecution cases arising out of medical malpractice cases was reasonably related to resolving the perceived crisis in medical malpractice suits arising from frivolous claims).

     In the present case there is simply not enough evidence that a similar "perceived crisis" exists in the automobile dealership industry to require the legislature to adopt the measures set forth in the 1993 and 1996 amendments to the Act.

     Moreover, even if the court were to assume that the problem existed, there is no basis for distinguishing between fraud committed by automobile dealers and others covered by the Act who defraud consumers.  Even Representative Cross conceded the plaintiffs' point that a general law could be made applicable by agreeing that the proposed amendments could be expanded to include other areas covered under the Act.  As the plaintiffs point out, the legislature has now extended the "car dealer amendments" to "holders of retail installment contracts within the meaning of Section 2.12 of the Motor Vehicle Retail Installment Sales Act."  See Pub. Act. 91-270 eff. January 1, 2000 (amending 815 ILCS 505/10a (West 2000)).

     We conclude that the 1993 and 1996 amendments to section 10a of the Act violate Illinois' constitutional prohibition against special legislation.  Deciding this case as we do, we need not separately address whether the legislation violates as well the equal protection clauses of the Illinois and United States Constitutions.

     The judgment of the circuit court granting Woodfield's motion for judgment on the pleadings as to count II of the complaint is reversed.  We reverse the circuit court's denial of the plaintiffs' motion for judgment on the pleadings and remand this cause to the circuit court for the entry of an order granting judgment on the pleadings on count II for the plaintiffs

and for further proceedings.

     Reversed and remanded with directions.

     
WOLFSON and SOUTH, JJ., concur.